509 F.Supp. 1123 (1981)
AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY, etc. et al., Plaintiffs,
v.
NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION, etc. et al., Defendants,
and
John J. Degnan, Attorney General of New Jersey, Defendant-Intervenor.
Civ. A. No. 74-178.
United States District Court, D. New Jersey.
March 16, 1981.
*1124 David J. Goldberg, Warren, Goldberg & Berman, Princeton, N. J., for plaintiff American Civil Liberties Union.
Edward J. Farrell, Farrell, Curtis, Carlin & Davidson, Morristown, N. J., for defendant New Jersey Election Law Enforcement Commission.
Peter J. Calderone, Deputy Atty. Gen. of New Jersey, Trenton, N. J., for defendant-intervenor.
Before GARTH, Circuit Judge, FISHER, Chief District Judge, and STERN, District Judge.

OPINION
*1125 STERN, District Judge.
This action presents a constitutional challenge to certain provisions of The New Jersey Campaign Contributions and Expenditures Reporting Act[1] which regulate activities by groups which seek to influence the legislative process. The Act imposes extensive reporting and disclosure requirements on all "political information organizations," defined to include any group "which seeks to influence the content, introduction, passage or defeat of legislation."[2] In general, the Act requires each political information organization to report  in some instances annually, in others eight times a year  its contributions and expenditures of over $100, and specifically prohibits the organization from receiving anonymous contributions. The Act also requires each political information organization to follow certain internal administrative procedures with respect to the receipt and expenditure of funds. Compliance with the Act is regulated and enforced by a bipartisan group, the Election Law Enforcement Commission, created by the statute.
The American Civil Liberties Union and its New Jersey affiliate brought this action on February 6, 1974. The complaint sought a declaratory judgment that the challenged provisions of the Act were unconstitutional and an injunction against enforcement of those provisions against plaintiffs and their members.[3] A three-judge court was convened,[4] and on March 13, 1974, this Court heard plaintiffs' motion for preliminary relief. At that hearing we were informed that a contemporaneous state court action involved a similar challenge to the constitutionality of the Act.[5] Because the state court had enjoined enforcement of the Act at that time, we found that plaintiffs were suffering no irreparable injury and denied the application for temporary relief. Upon the consent of all parties, this case was subsequently placed on the Court's inactive list pending the outcome of the state court litigation.
The state court action proceeded up New Jersey's judicial ladder. On February 6, 1980, the New Jersey Supreme Court filed its opinion upholding the constitutionality of the Act. New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Commission, 82 N.J. 57, 411 A.2d 168 (1980) (hereinafter "Chamber of Commerce").[6] In so holding, the Supreme Court narrowed the definition of "political information organization" to include only "persons whose direct, express, and intentional communications with legislators for the purpose of affecting the outcome of legislation are undertaken on a substantial basis." 82 N.J. at 80, 411 A.2d at 179. The Court also considered a $100 threshold exemption which the Commission had promulgated as an exception to the disclosure provisions of the Act, N.J.Admin.Code § 19:25-12.1(e); *1126 the Court held that the Commission had the power to prescribe such an exemption but that the $100 threshold was too low to satisfy the purposes of the Act. It therefore invalidated the regulation containing the $100 exemption and ordered the Commission to promulgate a regulation with a higher threshold.[7]
Following the state Supreme Court's decision, plaintiffs reactivated this case. Throughout this litigation their challenge to the Act has been founded on two concerns. First, plaintiffs contend that the broad administrative and reporting requirements will inhibit speech by groups, like themselves, which are not lavishly funded nor substantially devoted to lobbying. Second, they argue that the mere fact of disclosure of the names of contributors will impede the associational interests of them and their members.
Specifically, plaintiffs contend: (1) that the statutory definition of "political information organization" is unconstitutionally vague; (2) that the compelled reporting and disclosure of contributions and expenditures unrelated to lobbying is facially overbroad and, as applied, violative of their freedom of association; (3) that the compelled reporting and disclosure of contributions and expenditures relating to the dissemination of neutral political information is facially overbroad and, as applied, violative of their freedom of association; (4) that the Act is overbroad insofar as it requires reporting of legislative advocacy by employees of an affected organization; (5) that the detailed administrative requirements are facially overbroad; and (6) that the prohibition of anonymous contributions violates their freedom of association.
A hearing on cross-motions for summary judgment was scheduled for June 3, 1980. Prior to the hearing date, the Commission proposed extensive regulations which, if promulgated, would have affected plaintiffs' obligations under the statute. In particular, the proposed regulations would have affected plaintiffs' second and fifth contentions: Rather than reporting all contributions and expenditures exceeding $100, political information organizations would only have to report contributions if the pro rata share, considering the percentage of lobbying done by the organization and applying that percentage to the amount of the contribution, exceeded $100. For example, if the ACLU spent 5% of its funds on lobbying, only general contributions of more than $2,000 would be reported, because only then would the average amount spent on lobbying equal or exceed $100. In addition, expenditures would only have had to be reported if they related to lobbying activity. With respect to the fifth contention, the regulations contained a provision limiting the prohibition of anonymous contributions to those earmarked for lobbying or to an organization whose primary purpose was lobbying. The proposed regulations would not have modified the definitions of "political information" or "political information organization" contained in the statute (except, as ordered by the New Jersey Supreme Court, to set an enforcement threshold) or the detailed administrative requirements.
At the urging of the parties, the Court postponed decision on the merits of the case until the regulations were promulgated and the parties had had an opportunity to evaluate the effect of the regulations on this suit. The proposed regulations were promulgated, with modifications, on August 6, 1980. The only significant change, for purposes of this action, was the Commission's deletion of the pro rata formula for determining when contributions must be reported; the regulations provide more simply that organizations which are not primarily engaged in lobbying must report only those contributions and expenditures, exceeding $100, related directly to lobbying activities. Plaintiffs renewed their motion for summary *1127 judgment, and oral argument was held on October 23, 1980.[8]

I. VAGUENESS
Plaintiffs first contend that section 3(g) of the Act, which defines "political information organization" to include any group "which seeks to influence the content, introduction, passage or defeat of legislation,"[9] is unconstitutionally vague.[10]
In the Chamber of Commerce case the plaintiffs contended that this same language was overbroad; that is, that it proscribed constitutionally protected as well as unprotected speech or conduct. The New Jersey Supreme Court recognized that "[t]he Act would be overreaching if its terms were to be enforced literally and inflexibly," 82 N.J. at 74, 411 A.2d at 176, and so performed, in its phrase, "judicial surgery." In order to narrow the reach of the phrase "to influence ... legislation" so that groups which are only peripherally involved in legislative activities would not be subject to the Act, the Court created a "verbal threshold" for application of the Act; it concluded that section 3(g) includes only "activity which consists of direct, express, and intentional communications with legislators undertaken on a substantial basis by individuals acting jointly for the specific purpose of seeking to affect the introduction, passage, or defeat of, or to affect the content of legislative proposals." Chamber of Commerce, supra, 82 N.J. at 79, 411 A.2d at 179. In language which clarifies in part the phrase "substantial basis," the Court stated that the statute "would come into operation only with respect to the receipt and expenditure of significant sums of money used in connection with such communications." 82 N.J. at 80, 411 A.2d at 179. The Court further ordered the Commission to establish by regulation a monetary threshold "for the purpose of regulating the flow of `significant money' in the area of legislative influence," 82 N.J. at 84, 411 A.2d at 181. The Commission subsequently set the threshold or exemption at $2,500.[11] N.J.Admin.Code, § 19:25-8.5.
Unlike the plaintiffs in Chamber of Commerce, plaintiffs here challenge section 3(g) as unconstitutionally vague. The void for vagueness doctrine rests essentially on due *1128 process considerations  the notion that a statute should provide a reasonable person fair notice of what conduct it proscribes.[12] The doctrine serves to invalidate a statute even if the conduct which may be within its reach could constitutionally be regulated by the state. Its most important application, however, is to statutes which arguably prohibit constitutionally protected conduct. Thus, it has been used frequently to void statutes which may effect a prior restraint on the exercise of free speech. Smith v. Goguen, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). In this context the vagueness and overbreadth doctrines overlap: in each case the statutory infirmity is that conduct which may not be proscribed consistent with the Constitution is or may be inhibited by the statute.
Applying the strict scrutiny appropriate to cases involving First Amendment freedoms, we cannot find that the definition of "political information organization" is unconstitutionally vague. Any constitutional problems engendered by the bare statutory language have been remedied by the "judicial surgery" performed by the New Jersey Supreme Court and by the precise monetary threshold established by regulation.[13]
Thus, we reject plaintiffs' contention that the definition of a "political information organization" is unconstitutionally vague.

II. REPORTING AND ADMINISTRATIVE REQUIREMENTS

A. Overview
Plaintiffs contend that the statutory scheme of administrative, reporting and disclosure requirements violates their First Amendment rights to freedom of speech, petition for the redress of grievances, and freedom of association,[14] and is unconstitutionally overbroad. Specifically, they contend that:
(1) the reporting and administrative requirements of sections 8 and 16 of the Act infringe on plaintiffs' freedom of speech and are unconstitutionally overbroad, in that they impose burdensome obligations on activities unrelated to lobbying;
(2) the reporting and administrative requirements of sections 8 and 16 of the Act are unconstitutionally overbroad in that they require reporting of activities not expressly advocating the passage or defeat of a ballot question or piece of legislation; and
(3) the administrative requirements of sections 13, 14 and 15 of the Act infringe on the plaintiffs' freedom of speech and are unconstitutionally overbroad, in that imposition of these requirements on groups of limited resources inhibits their exercise of speech.
The interests which plaintiffs seek to protect are fundamental in nature. Freedom of speech and the right to petition for the redress of grievances are "among the most precious of the liberties safeguarded by the Bill of Rights." District 12, United Mine Workers v. Illinois State Bar Ass'n, *1129 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967). Any infringement on such rights must be based on a compelling governmental interest; even then, the state must demonstrate that it has chosen the least restrictive means to further such an interest. Buckley v. Valeo, 424 U.S. 1, 60-68, 96 S.Ct. 612, 654-658, 46 L.Ed.2d 659 (1976). In the First Amendment area, the Supreme Court "has altered its traditional rules of standing to permit ... `attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Therefore, it is sufficient that plaintiffs show that "protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects" of the statute. Id.
The state's interest in the reporting and disclosure of contributions and expenditures relative to lobbying activities is threefold. First, disclosure serves the needs of elected officials. It permits legislators to identify the source of funds used to influence them, and to discover the particular constituency advocating a particular position on legislation. It thus permits legislators to evaluate whether the interest of a particular constituency is consistent with the interests of other constituencies. See United States v. Harriss, 347 U.S. 612, 625, 74 S.Ct. 808, 816, 98 L.Ed. 989 (1954).
Second, regulation of lobbying serves the needs of the electorate. "The voting public should be able to evaluate the performance of their elected officials in terms of representation of the electors' interest in contradistinction to those interests represented by lobbyists." New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Commission, 155 N.J.Super. 218, 228, 382 A.2d 670, 675 (App.Div.1977), citing Fritz v. Gorton, 83 Wash.2d 275, 307-09, 517 P.2d 911, 931 (1974). See also Advisory Opinion on Constitutionality of 1975 P.A. 227 (Questions 2-10), 396 Mich. 465, 513, 242 N.W.2d 3, 22-24 (1976).
Third, the state has a strong interest in promoting openness in the system by which its laws are created. The Election Law Revision Commission, created in 1964 by the legislature to study campaign and legislative financing, stated in its 1970 report:
Disenchantment and perhaps disillusionment with the political process today stems from lack of knowledge of its details, lack of any attempt to force the disclosure of the identity of major participants in the political funding process and a lack of adequate dissemination of such information.
Report to the Governor and Legislature pursuant to P.L. 1964, c. 29; P.L. 1965, c. 73; P.L. 1969, c. 192; P.L. 1970, c. 42 at 2 (1970). This interest, recognized in both the Supreme Court and trial court opinions in Chamber of Commerce, 82 N.J. at 73-74, 411 A.2d at 176; 135 N.J.Super. at 544, 343 A.2d at 800, is served by requiring groups to report funds used to influence the legislative process.
The question now before this Court is whether the challenged provisions of the Act serve these interests and, if so, whether they are a proper means of doing so.

B. Reporting Requirements

1. Activities Unrelated to Lobbying
Section 8 of the Act requires all political information organizations[15] to report the names and addresses of all persons who contribute more than $100 during a calendar year and to itemize all expenditures made during the year, "whether or not such expenditures were made, incurred, or authorized ... to seek to influence the content, introduction, passage or defeat of any legislation." N.J.Stat.Ann. § 19:44A-8. If the group is a political information organization solely because of its efforts to influence legislation, the reporting is done *1130 annually. If the organization has also aided in the passage or defeat of any public question or has provided public information on any candidate or public question, it must comply with the bi-monthly and pre- and post-election reporting requirements of section 16. N.J.Stat.Ann. § 19:44A-16.
The recently promulgated regulations, apparently in contradiction of the statutory language, require political information organizations to report only those contributions "made for the express purpose of lobbying, or made to a person or organization whose major purpose is to engage in lobbying activity,"[16] N.J.Admin.Code § 19:25-8.6(a)(5)(ii), and those expenditures directly related to lobbying, N.J.Admin.Code § 19:25-8.6(a)(6). Plaintiffs do not seriously challenge the requirements that they and similar organizations report contributions and expenditures directly related to lobbying.[17] Such requirements serve the important governmental interests noted above. See United States v. Harriss, supra, 347 U.S. at 625, 74 S.Ct. at 816 (upholding constitutionality of the Federal Regulation of Lobbying Act, 2 U.S.C. §§ 261-270). In fact, disclosure requirements are probably the least restrictive means of serving those interests. Buckley v. Valeo, supra, 424 U.S. at 60, 96 S.Ct. at 654 (Court recognized plaintiffs' concession that "narrowly drawn disclosure requirements are the proper solution to virtually all of the evils Congress sought to remedy"). Nor do plaintiffs contend that the $100 threshold for the reporting of contributions and expenditures is arbitrarily low. See id. at 83, 96 S.Ct. at 665 (upholding requirements that political committees report publicly contributions of $100 or more and keep internal records of contributions of $10 or more).
If section 8 of the Act were interpreted literally to require massive disclosure of activity unrelated to lobbying, it would present grave constitutional problems.[18] As a practical matter, this section is limited by section 19:25-8.6 of the regulations, which confines the reporting requirements to activities related to lobbying or to unrelated activities by groups primarily devoted to lobbying. This regulation effectively permits the Commission to execute the essential policies of the Act and at the same time obviates any overbreadth problem created by the bare statutory language. Moreover, *1131 the Commission will enforce the Act only as it is narrowed and limited by the regulation.
Thus, we hold that section 8 of the Act, as limited and modified by the regulation,[19] is constitutional.[20]

2. Activities Not Involving Express Advocacy
The Act provides that any organization which "provides political information concerning any candidate or candidates for public office or with respect to any public question" is a political information organization and must comply with the reporting and disclosure provisions of the Act. N.J. Stat.Ann. §§ 19:44A-3(g). In fact, such political information organizations are subjected to more burdensome requirements than those political information organizations which seek to influence legislation but do not distribute political information. "Political information" includes "any statement ... which reflect [sic] the opinion of the members of the organization on any candidate or candidates for public office, on any public question, or any legislation, or which contain [sic] facts on any such candidate, public question or legislation whether or not such facts are within the personal knowledge of members of the organization."[21] N.J.Stat.Ann. § 19:44A-3(h).
The clear import of this language is that an organization which furnishes any information on public questions to the electorate must comply with the reporting and disclosure provisions of the Act.[22] Even if the section did not apply to the most neutral conveyances of information,[23] such a requirement is plainly unconstitutional.
The Federal Election Campaign Act ("FECA"), which contains analogous  though narrower  provisions, has been interpreted to require reporting and disclosure only with respect to partisan activities, the implication being that any further reach would be unconstitutional. In United States v. National Committee for Impeachment, 469 F.2d 1135, 1139-42 (2nd Cir. 1972) the court considered section 301 of FECA, which included as a "political committee" any organization which accepts contributions "made for the purpose of influencing" the nomination or election of any candidate for public office. Considering the constitutional implications of a literal interpretation of this language, the court construed the phrase "made for the purpose of influencing" *1132 to require "an expenditure made with the authorization or consent, express or implied, or under the control, direct or indirect, of a candidate or his agents." Id. at 1141. The court held that an organization which placed a single advertisement advocating the impeachment of President Nixon was not a political committee within the meaning of the Act. See also American Civil Liberties Union v. Jennings, 366 F.Supp. 1041 (D.D.C.1973), vacated as moot, 422 U.S. 1030, 95 S.Ct. 2646, 45 L.Ed.2d 686 (1975). In Buckley v. Valeo, supra, the Supreme Court construed a provision requiring "[e]very person (other than a political committee or candidate) who makes contributions or expenditures" of over $100 to file a statement with the Commission, "to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate," 424 U.S. at 80, 96 S.Ct. at 664.
In Federal Election Commission v. Central Long Island Tax Reform Immediately Committee, 616 F.2d 45 (2nd Cir. 1980), the court considered whether the reporting provisions applied to a group which spent about $135 to distribute to the members of the John Birch Society information concerning the voting records of various Congressmen on issues affecting taxes. The court found that such conduct did not "expressly advocate" the election or defeat of a clearly identified candidate, and thus that the Act did not apply to the defendants. Chief Judge Kaufman, in a concurring opinion, agreed that it was unnecessary to reach the constitutional question, but stated:
I confess that I find this episode somewhat perverse. It is disturbing because citizens of this nation should not be required to account to this court for engaging in debate of political issues. Indeed, since the days of the infamous Stamp Act, vigorous denunciation of "oppressive" rates of taxation, has enjoyed a long and notable history. Moreover, it is incongruous to compel defendants to convince a court that they have not dared to "expressly advocate" the defeat of a candidate for public office. I had always believed that such advocacy was to be applauded in a representative democracy.
This case has served to reinforce my view that we "must remain profoundly skeptical of government claims that state action affecting expression can survive constitutional objections."
Id. at 54.
One court has actually reached the question of the constitutionality of a provision requiring reporting by a group not engaged in express advocacy. The District of Columbia Circuit, in a portion of its decision in Buckley v. Valeo, 519 F.2d at 821, 869-78 (D.C.Cir.1975), which was not appealed to the Supreme Court, struck down section 308 of FECA, 2 U.S.C. § 437a, which provides:
Any person ... who publishes or broadcasts to the public any material referring to a candidate ... advocating the election or defeat of such candidate, setting forth the candidate's position on any public issue, his voting record, or other official acts ... or otherwise designed to influence individuals to cast their votes for or against such candidates or to withhold their votes from such candidate shall file reports with the Commission as if such person were a political committee.
The court noted that "section [308] is susceptible to a reading necessitating reporting by groups whose only connection with the elective process arises from completely nonpartisan public discussion of issues of public importance," id. at 870, and that "[E]very position on any issue, major or minor, taken by [any candidate] would be a campaign issue and any comment upon it in, say, [an unexempted] newspaper editorial or an advertisement would be subject to proscription unless the registration and disclosure regulations of the Act ... were complied with." Id. at 871, quoting from United States v. National Committee for Impeachment, supra, 469 F.2d at 1142.
The activities of groups like the ACLU and the League of Women Voters, which according to an advisory opinion of the Commission is also regulated by this statute, are at the core of the First Amendment. The bulk of these groups' activities *1133 is not aimed at the legislature but is intended to educate the public generally. The interest of the state in the regulation of such speech is diminished, and any attempt to regulate speech which might inhibit the protected communications of ideas relating to political issues must be drawn quite carefully. The broad language in the New Jersey statute, however, is susceptible to no narrowing reading which would obviate its constitutional problems. Accordingly, this Court must conclude that it is unconstitutional. Our holding in this respect, however, does not affect the balance of the statute.

C. Other Administrative Requirements
In addition to the elaborate reporting requirements previously discussed, the Act mandates a set of internal procedures which apply to political information organizations as well as to campaign financing organizations.[24] Specifically, an organizational treasurer must be designated and his name filed with the Commission along with the name of the organization's depository. The names of any deputy treasurers and additional depositories must also be filed with the Commission. In the event of death, resignation, or removal of such officers, a successor must be appointed within ten days. N.J.Stat.Ann. § 19:44A-13. In addition, deposits, which can only be made by the treasurer or deputy treasurer, must be accompanied by a statement containing the name and address of the persons contributing the deposited funds "unless the contribution does not exceed $100." The deposit must be made within ten days of the receipt of the funds. N.J.Stat.Ann. § 19:44A-15. Further, all contributions must be channeled to the treasurer or deputy treasurer and only they can authorize political information expenditures. N.J.Stat.Ann. § 19:44A-14. Knowing failure to comply with these rules may result in civil or criminal penalties, N.J.Stat.Ann. §§ 19:44A-21, 22.
Plaintiffs contend that this burdensome administrative scheme in itself infringes on their freedom of speech, even if it is applied solely to plaintiffs' lobbying activities.
The administrative requirements, as applied to nonlobbying activities, impose a burden on the exercise of First Amendment rights but do not substantially further any state interest. This Court, however, rejects plaintiffs' contention that the administrative requirements, applied solely to their lobbying activities, place an untoward burden on their speech. An organization like the New Jersey ACLU which depends in large part on volunteer workers may encounter difficulties in following the strict procedures required by the Act. For example, the treasurer of the New Jersey ACLU spends only two to four hours per week at the organization's office. He states in an affidavit that he "would be unable to comply with [the requirements of the Act] without enormously expanding [his] present involvement in the ACLU of New Jersey." Barson affidavit, ¶ 3. He would now be required to approve all expenditures for political purposes, and delegation to his clerical staff would be difficult in view of the penalties for failure to comply with the Act.
Mandatory administrative requirements, however, are an essential means of enforcing the legitimate state interest in regulating lobbyists. The burden that this system, applied only to contributions earmarked for lobbying, would have on plaintiffs is not extreme. It is constitutional to require that all contributions earmarked for lobbying proceed through the treasurer or a deputy treasurer into a depository, and that all expenditures made in furtherance of lobbying be approved by the treasurer from funds in the depository. Non-earmarked contributions which the New Jersey ACLU wishes to use for lobbying could be transferred by the treasurer into the depository containing the legislative funds, and simply marked as a transfer from the general treasury. The money could then be drawn upon for lobbying. Such a procedure may be slightly more cumbersome than the procedure now used by the New Jersey ACLU, *1134 but any possible infringement on speech is outweighed by the benefits of the system to the legislators and the public.
Thus, as we read and interpret the Act as applying only to lobbying activities, we find no constitutional violation.

III. DISCLOSURE REQUIREMENTS
Throughout this litigation plaintiffs' primary concern has been that disclosure of their contributors will inhibit their ability to advocate their views effectively on issues relating to civil liberties. They argue that, because the nature of the plaintiff organizations is controversial, the compulsory disclosure of the names of members and contributors required by sections 8 and 14 of the Act, N.J.Stat.Ann. §§ 19:44A-8, 14, will cause present members to resign and will deter other persons from joining, paying dues, or making contributions.[25] Many contributors, they assert, would be unwilling to risk the public abuse or vilification which could result from public identification of their support. Specifically, sections 8 and 14 of the Act require disclosure of the names and addresses of all contributors of more than $100 during a twelve-month period to a particular political information organization and absolutely prohibit any anonymous contributions of whatever size to such an organization. A regulation modifies this requirement to permit anonymous contributions "unless the contribution is made for the express purpose of lobbying, or is made to a person or organization whose major purpose is to engage in lobbying activity." N.J.Admin.Code, § 19:25-8.7.
There is an inherent tension in any governmental attempt to compel an individual or organization to disclose information. The disinfecting "sunlight" to which the Court referred in Buckley[26] contains unwholesome particles, too. On the one hand, secrecy may be "the shield of dangerous and irresponsible designs"[27] on the legislature, and a blindfold upon the scrutiny of legislators seeking to regulate themselves. On the other hand, anonymity is often the linchpin of effective advocacy by persecuted and oppressed groups. See Talley v. California, 362 U.S. 60, 64-65, 80 S.Ct. 536, 538-539, 4 L.Ed.2d 559 (1960).
Freedom of association, that is, the right of individuals to exercise as a group those rights which they may exercise as individuals, has been recognized by the Supreme Court as crucial to the effective advocacy of ideas, and thus has become an implied First Amendment right. Buckley v. Valeo, supra, 424 U.S. at 64-65, 96 S.Ct. at 656-657; NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). Moreover, the Court has recognized that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief protected by the First Amendment," Buckley v. Valeo, supra, 424 U.S. at 64, 96 S.Ct. at 656, and that freedom of association "is diluted if it does not include the right to pool money through contributions," id. at 65, 96 S.Ct. at 656.
Anonymous contributions intended to further the general purposes of the plaintiff organizations  that is, the furtherance and preservation of civil liberties  represent the most fragile form of speech and yet are the least related to the legitimate governmental interest in the regulation of lobbying activity. The statute, however, as narrowed by the regulation, requires disclosure only of contributions earmarked for lobbying activities. This disclosure requirement imposes a relatively small burden on an organization like the New Jersey ACLU (although a *1135 much broader one on groups more heavily oriented toward lobbying) but is necessary to fulfill the compelling state interests of the Act.[28]
The state's interest in regulating lobbying activities has been noted above. The compelled disclosure of contributions directly related to lobbying activities is an essential, in fact the essential aspect of the regulatory scheme. In response to such an interest, plaintiffs must demonstrate significant and actual curtailment of their freedom of expression. Thus, this case is unlike NAACP v. Alabama ex rel. Patterson, supra, for example, in which no legitimate state interest was propounded and, in fact the disclosure sought was not even relevant to the asserted, although improper, state objective. Plaintiffs have alleged no effect on the exercise of First Amendment rights comparable to that demonstrated in NAACP v. Alabama. In NAACP v. Alabama, plaintiff "made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members [had] exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462, 78 S.Ct. at 1171. This language was cited in Buckley, 424 U.S. at 69, 96 S.Ct. at 658, which contrasted the finding of the court below that "any serious infringement on First Amendment rights brought about by the compelled disclosure of contributors is highly speculative." Id. at 70, 96 S.Ct. at 659. The type of disclosure required here is quite different: plaintiffs need report only contributions earmarked for lobbying. Because plaintiffs are not required to report the names of contributors to their general treasuries, there is no danger that those contributors will risk public abuse or vilification.
Accordingly, we hold that the prohibition against anonymous contributions ear-marked for lobbying is constitutional.

IV. CONCLUSION
To summarize, this Court holds that the state may not require the reporting of contributions and expenditures with respect to political information which does not expressly advocate the passage or defeat of legislation or a ballot question. We hold that the remainder of the statute, as we have construed it with respect to plaintiffs, is constitutional.
NOTES
[1] N.J.Stat.Ann. §§ 19:44A-1 et seq. The statute was effective April 24, 1973.
[2] N.J.Stat.Ann. § 19:44A-3(g).
[3] On July 3, 1973, the New Jersey ACLU requested the Election Law Enforcement Commission, pursuant to section 6(f) of the Act, N.J.Stat.Ann. § 19:44A-6(f), to issue an advisory opinion concerning the applicability of the Act to it. On September 22, 1973, the Commission issued its opinion that the New Jersey ACLU is a political information organization within the meaning of the Act.
[4] Plaintiffs requested a three-judge court pursuant to 28 U.S.C. § 2281, which then provided for the convening of such a court to hear actions filed to enjoin enforcement of an allegedly unconstitutional state law. Although that statute was repealed in 1976, Pub.L. 94-381, § 1, 90 Stat. 1119 (Aug. 12, 1976), this case is still properly before a three-judge court because of a savings clause in the repeal statute. Id. § 7, 90 Stat. 1120.
[5] That action was filed as a class action on behalf of all groups considered political information organizations under the Act. Plaintiffs filed a statement in that suit to reserve their right to litigate their constitutional claims in federal court. See England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).
[6] The lower court decisions in that case are reported at 135 N.J.Super. 537, 343 A.2d 796 (Ch.Div.1975) (holding much of the statute unconstitutional), and 155 N.J.Super. 218, 382 A.2d 670 (App.Div.1977) (reversing the lower court and upholding the Act with minor modifications).
[7] The Supreme Court did not consider plaintiffs' challenge to several regulations that were adopted by the Commission during the pendency of that suit had not considered by the lower courts. 82 N.J. at 81-82 n.3, 411 A.2d at 180 n.3.
[8] The parties have brought to the Court's attention two bills considered by the New Jersey legislature which, if enacted, would transfer authority to regulate lobbying groups from the Election Law Enforcement Commission to the Attorney General's office and which would modify the reporting and disclosure requirements imposed on such groups. S.1396 & S.1397, 199th Leg., 2d Ann.Sess. These bills were passed by the Senate on Jan. 29, 1981, and the Assembly on Feb. 9, 1981, and are awaiting gubernatorial action.
[9] Section 3(g) provides:

The term "political information organization" means any two or more persons acting jointly, or any corporation, partnership, or any other incorporated or unincorporated association, whether or not it is required to be registered pursuant to the "Legislative Activities Disclosure Act of 1971" (P.L. 1971, c. 183), which is organized for the purpose of, or which provides political information concerning any candidate or candidates for public office or with respect to any public question, or which seeks to influence the content, introduction, passage or defeat of legislation.
The term shall not apply to any bona fide newspaper, magazine, radio or television station or other bona fide news medium disseminating political information, advertising and comment in the normal course of its business; nor to any recognized school or institution of higher education, public or private, in conducting, sponsoring or subsidizing any classes, seminars, forums, discussions or other events in which political information or discussion thereof or comment thereon is an integral part.
N.J.Stat.Ann. § 19:44A-3(g). See also N.J.Stat. Ann. § 19:44A-4(a), which states that the Act applies "[w]henever an attempt is made to influence the content, introduction, passage or defeat of legislation." Plaintiffs also challenge the overbreadth of this section.
[10] Plaintiffs also contend that the definition of "political information" in section 3(h), N.J.Stat. Ann. § 19:44A-3(h), is unconstitutionally vague. Because the requirements imposed upon organizations providing "political information" are also challenged as overbroad, the vagueness contention is considered in section II(B) of this opinion. See note 22 infra.
[11] The Supreme Court struck down a $100 threshold as too low to fulfill the statutory aims and yet avoid constitutional problems. See text accompanying note 7 supra.
[12] This due process rationale contains a second strand. A vague statute is not only an unfair guide to conduct, but "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972); see Buckley v. Valeo, 424 U.S. 1, 41 n.48, 96 S.Ct. 612, 645 n.48, 46 L.Ed.2d 659 (1976).
[13] Plaintiffs concede the validity of this regulation as a matter of state law. Tr. of Oct. 23, 1980, at 5-6. They do not contend that triggering application of the Act by spending over $2,500 on lobbying activities is in itself an unconstitutional abridgment of First Amendment rights.
[14] The burdensomeness of the reporting and administrative requirements raises questions pertaining to freedom of speech and the right to petition for the redress of grievances and will be discussed here. The disclosure requirements impact on a separate right, the freedom of association, and will be discussed in Part III infra.
[15] As used in this opinion, a "political information organization" is one which meets the $2500 threshold discussed in Part I supra.
[16] "For the purposes of this subparagraph, any person or organization shall be deemed to engage in lobbying activity as its major purpose for any calendar year in which expenditures for such activity constitute more than 50 per cent of its total expenditures." N.J.Admin.Code, § 19:25-8.6(a)(5)(ii).
[17] Plaintiffs concede that, "[i]f this provision had been inserted in the law by the legislature, the statute would probably be constitutional." Plaintiff's brief in support of motion for summary judgment, at 22.
[18] Section 8, by its terms, requires political information organizations to report contributions to their general treasuries, even though none or but a small percentage of the funds may go toward legislative activities. Moreover, it requires that each political information organization keep itemized records of all expenditures, not merely those related to lobbying, and file them with the Commission. It is difficult to envision how the governmental interests that support the reporting of lobbying activities are served by extending the reporting requirements into the non-lobbying sphere. The burden of compliance with these requirements may constitute a severe barrier to the exercise of free speech. See Federal Election Commission v. Central Long Island Tax Reform Immediately Committee, 616 F.2d 45, 53-54 (2nd Cir. 1980) (Kaufman, C.J., concurring) (pointing out "perverse" implications of applying Federal Election Campaign Act to a group which spent $135 for political purposes); New York Civil Liberties Union v. Acito, 459 F.Supp. 75, 87 (S.D.N.Y.1978). There may also be problems in applying the Act to a group which does not regularly engage in lobbying, even if more substantial amounts of money are involved. United States v. National Committee for Impeachment, 469 F.2d 1135, 1139-42 (2nd Cir. 1972) (construing FECA not to apply to a group which placed a single advertisement in the New York Times, even though the cost of the advertisement was over $17,000). Compare United States v. Rumely, 345 U.S. 41, 46-47, 73 S.Ct. 543, 546, 97 L.Ed. 770 (1953) (construing the phrase "lobbying activities" in the Federal Regulation of Lobbying Act to include only "`lobbying in its commonly accepted sense,' that is, `representations made directly to the Congress, its members, or its committees'" and not to include the sale of periodicals representing a particular viewpoint to the public).
[19] This approach is consistent with that adopted by the Supreme Court of New Jersey in Chamber of Commerce.
[20] Similarly, section 19:25-8.9(c) of the regulations, N.J.Admin.Code § 19:25-8.9(c), modifies the statute to obviate any contention that section 8 is overbroad because it requires reporting of legislative advocacy by employees of an affected organization. N.J.Admin.Code § 19:25-8.9(c), which disposes of plaintiff's fourth claim (see page 4 supra) reads:

The covered employee of a corporation or other principal shall not have an obligation of filing an annual report; the obligation to file the annual report will be that of the corporation or other principal.
[21] The regulations do not change the obligations imposed upon groups which provide political information. See N.J.Admin.Code §§ 19:25-1.7; 19:25-11.3(c). The Commission's opinion letter, see note 3 supra, did not hold the New Jersey ACLU to be subject to the requirements of section 16 because of compilation and distribution of "legislative scorecards," but also stated that section 16 would apply if "the tone of the publication, the presence of editorial comment, or other persuasive circumstances, show that the publication is in fact an expenditure authorized or incurred in furtherance or in aid of the candidacy of the candidate and is not simply publication of political information as to all candidates."
[22] Because the import of this language is clear and because, as will be discussed, the section is unconstitutionally overbroad, the Court will not consider whether the statute is also unconstitutionally vague.
[23] Defendants note that an advisory opinion by the Commission to the League of Women Voters interpreted section 3(h) not to apply to neutral dissemination as to all candidates in an election. They also contend that the section, based on plaintiffs' factual contentions, would not cover the educational activities of the New Jersey ACLU. Defendants brief in support of motion for summary judgment, at 16-17. This contention was not considered by the New Jersey Supreme Court in Chamber of Commerce. See 82 N.J. at 65 n.1, 411 A.2d at 172 n.1.
[24] These requirements are not changed in any material way by the new regulations.
[25] Plaintiffs also challenge section 20 of the Act, N.J.Stat.Ann. § 19:44A-20, which prohibits contributions to influence legislation made in a fictitious name.
[26] In enacting these [disclosure] requirements [Congress] may have been mindful of Justice Brandeis' advice:

Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.
Buckley v. Valeo, supra, 424 U.S. at 67, 96 S.Ct. at 658.
[27] L. Tribe, American Constitutional Law 707 (1978).
[28] The requirement that all earmarked contributions of more than $100 in which the name and address of the contributor are known be disclosed and the prohibition against anonymous earmarked contributions, of whatever amount, raise the same freedom of association issues. The distinction between $100 contributions and those which are much smaller goes only to whether the burden of reporting small contributions renders the requirement unconstitutional. That the relevant amount is basically for the legislature, see page 1130, supra. In addition, the need to include all anonymous contributions is obvious; any alternative would create insurmountable enforcement problems.