## Campbell v. Commonwealth.

(Decided February 12, 1929.)

LESLIE W. MORRIS for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

Opinion of the Court by Commissioner Stanley—
Reversing.

The General Assembly, at its 1916 session, enacted what is commonly called the "the Lobbyist Act" (chapter 16), which is now incorporated in the statutes as sections 1999a1 et seq. The court has not hitherto been called upon to consider the constitutionality or construction of the law.

The appellant, Peter Campbell, appeals from a judgment fining him $750 for a violation of section 6 of the act, it being charged that, as legislative counsel or agent, employed for a pecuniary consideration by the Kentucky State Federation of Labor, he went upon the floor of the House of Representatives while it was in session and engaged in its regular duties without invitation of that body.

Section 1 of the act provides that every employer of a person to act as agent or counsel to promote or oppose in any manner the passage by the Legislature of any legislation affecting the pecuniary interests of any individual, association, or corporation, as distinct from those of the whole people of the state, or to act in any manner as a legislative counsel or agent in connection with any such legislation, shall cause the name of such representative to be entered upon a legislative docket provided by the act, and further requires that the person so employed shall register. Sections 2, 3, 4, and 5 relate to details of the registration and other matters not especially material in this case.

Section 6 is as follows: "It shall be unlawful for any person employed for a pecuniary consideration to act as legislative counsel or agent to go upon the floor of either house of the Legislature reserved for the members thereof while in session, except upon the invitation of such house."

Section 7 defines corrupt lobbying. Section 8 fixes the penalties, among them being that any legislative agent or counsel, violating any provision of the act, shall be deemed guilty of a felony, and, upon conviction, shall be fined not exceeding $5,000, or confined in the penitentiary not to exceed five years, or both so fined and imprisoned, in the discretion of the jury.

The act is assailed as opposed to three sections of the Constitution. In considering the constitutionality of a statute, there are two fundamental rules control-

ling the court, namely: (1) To sustain the act, unless clearly contrary or repugnant to a constitutional provision, and (2) to resolve every presumption in favor of its constitutionality, and to make every effort to harmonize the Constitution and the statute. Wood v. Commonwealth, 225 Ky. 295, 8 S. W. (2d) 428.

(a) First, it is contended that the act does not conform to the requirements of section 51 of the Constitution, which is in part: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." The title to the act under consideration is as follows: "An act to require the registration of legislative counsel and legislative agents; and provide for their registration before legislative committees; and to define and prohibit corrupt lobbying."

It is earnestly and ably argued that the act embraces two subjects, that the title is restrictive, and that section 6 is not germane either to that part of the title respecting the registration of legislative counsel or the prohibition of corrupt lobbying. But it is apparent that the whole subject-matter of this enactment is lobbying.

While the right of every citizen having a special interest concerning which there may be legislation enacted to present his cause is recognized as legitimate, and he may be represented before the committees of the Legislature or that body itself by paid representatives, it was deemed wise to regulate their activities and require a disclosure of the interests being represented. While such activities and representation may not be considered as corrupt, or even improper, it was an eminently proper subject for legislation in connection with those portions of the act defining corrupt lobbying and providing penalties therefor. It cannot be said, therefore, that the act embraces two distinct subjects.

We need not determine whether the constitutionality of section 6, standing alone, can be justified, for, reading the act as a whole, it is obviously drawn to control the operations of registered lobbyists, and to prevent corruption and attempts at corruption. It is clear that the special provision of section 6 is consistent with this purpose and harmonizes with the title. It is regulatory of lobbyists and also calculated to hinder corrupt lobbying. One who, outside of the legislative halls, may have improperly influenced or secured the promise of a weak legislator to do or refrain from doing something

on the floor of the house, would by his very presence exert a subtle influence and have a certain subjective effect on the one so dominated or controlled.

This section of the Constitution has been prolific of much litigation. In its interpretation a liberal construction has always been given, and, unless provisions were foreign or related to the subject expressed in the title, the validity of the act was sustained as being sufficient compliance with the constitutional requirement. Bowman v. Hamlett, 159 Ky. 184, 166 S. W. 1008; Burnside v. Lincoln County Court, 86 Ky. 423, 6 S. W. 276, 9 Ky. Law Rep. 635; Weimer v. Commissioners of Sinking Fund, 124 Ky. 377, 99 S, W, 242, 30 Ky. Law Rep. 523; Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367.

Considering that the purpose of the section is to prevent surprise or fraud, by the inclusion of provisions in bills of which the titles give no intimation, and which therefore might be overlooked and unintentionally adopted, in Stone v. City of Lexington, 192 Ky. 60, 232 S. W. 50, the court said:

"Hence before any act of the General Assembly is declared contrary to the Constitution on the ground that the subject of the act is not expressed in the title, by reason of a variance between the title and the body of the act, it should be made to appear to the satisfaction of the court that the alleged variance is such as to bring it within the range of the evils sought to be guarded against, and such as to justify its condemnation upon that ground alone."

In applying the test to the state prohibition law, where it was claimed the clause declaring it to be unlawful to drink intoxicating liquor or to drink in a public place was not germane to the title of the act prohibiting the manufacture, sale, transportation, or other disposition of intoxicating liquor (Commonwealth v. Robinson, 192 Ky. 374, 233 S. W. 791), it was written:

"It is clear that the general legislative subject of the act, and the purpose and object of the Legislature in enacting it, was the prohibition of the use of intoxicating liquors for beverage purposes. The statute enacted following the title may include every matter germane to and in furtherance of the general subject expressed in the title. If the provision of the act attempted to be impeached for constitutional

invalidity relates to the general subject expressed in the title, is naturally connected with it, and not foreign to it, it.is not rendered invalid by section 51 of the Constitution.''

This act as a whole concerns one general subject only, namely, lobbying, and the provision under consideration, prohibiting the appearance on the floor of either house of the General Assembly without invitation, as presently construed, is easily and naturally embraced within the title; hence the law is not in violation of section 51 of the Constitution.

(b) It is insisted that the offense created by section 6 of this act is nothing more than a contempt of that branch of the General Assembly whose floor has been invaded, and that, under section 39 of the Constitution, one guilty of such an offense must be tried by that body. That section is as follows:

"Each house of the General Assembly may determine the rules of its proceedings, punish a member for disorderly behavior, and, with the concurrence of two-thirds, expel a member, but not a second time for the same cause, and may punish for contempt any person who refuses to attend as a witness, or to bring any paper proper to be used as evidence before the General Assembly, or either house thereof, or a committee of either, or to testify concerning any matter which may be a proper subject of inquiry by the General Assembly, or offers or gives a bribe to a member of the General Assembly, or attempts by other corrupt means or device to control or influence a member to cast his vote or withhold the same. The punishment and mode of proceeding for contempt in such cases shall be prescribed by law, but the term of imprisonment in any such case shall not extend beyond the session of the General Assembly.''

Pursuant to that authority the Legislature, at its first session following the adoption of the Constitution, enacted sections 1982, 1993, et seq., of the Statutes, and it is argued that the General Assembly was restricted to the enactment of those laws, and was not authorized to delegate to the courts the power to try and punish persons guilty of contempt or even of bribery of its members.

What was the intention of the framers of the Constitution in this respect? There are well-recognized reciprocal restraints on the separate branches of the government, and the supremacy of one within its sphere will not be trespassed upon. Constitution, secs. 27, 28. Each branch must exercise the respective powers vested in it, but the legislative branch may and should authorize judicial functions to be exercised by the courts. Boone v. Town of Verona, 190 Ky. 430, 227 S. W. 804. The act under consideration does not delegate to the courts the exercise of any authority to legislate, but only confers upon them the administration of the law itself, which is, obviously, within its powers. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828. It will be observed that section 39 grants a permissive, and not an exclusive, right to the Legislature to try and to punish offenders against its authority.

The right to protect its deliberations and proceedings from intereference, and to punish those guilty of an affront to its dignity, is as inherent in legislative bodies as in courts, and, since it is well settled that punishment for contempt of court is not a bar to prosecution for the crime arising from such conduct, it would seem that punishment for contempt before the General Assembly could not be a bar to prosecutions in the courts. Rapalje on Contempts, p. 3. In considering the subject, in Melton v. Commonwealth, 160 Ky. 656, 170 S. W., 43 L. R. A. 1915B, 689, the court used this language:

> "There are also aggravated offenses that may be contempt of court, and also indictable crimes, and punishment for contempt would not bar a prosecution by indictment for the larger crime."

Let us consider that part of the constitutional section relating to bribery. Such an offense has always been recognized by enlightened civilization as a heinous crime, and section 1366 of the Statutes provides a maximum penalty of five years' punishment for one guilty of bribing or offering a bribe to a member of the Legislature. If the power to try those charged with bribery or attempted bribery of members of the Legislature is exclusively vested in the General Assembly, then under the Constitution the maximum penalty would be imprisonment only until the adjournment of that session of the Legislature. It is not conceivable that the framers of

the Constitution intended absolutely to deprive the judicial branch of the government of jurisdiction over such aggravated offenses.

The courts are created by the Constitution and have their own special functions. The legislative branch may not invade their province, except by clear constitutional grant. On the instant subject that grant is permissive and limited, not exclusive. The construction contended for by appellant would violate the letter and the spirit of the whole instrument, creating and providing that the divisions of government shall be co-ordinate; that is, of equal rank and importance, combining in harmonious action their delicate balance and respective functions, in order to maintain the rights of the sovereign citizens.

(c) The appellant also invokes the equal protection clause of the Federal and State Constitutions. He asserts that, in prohibiting only persons "employed for a pecuniary consideration" to represent citizens in legislative matters from going upon the floor of either house of the General Assembly while in session, the act makes an arbitrary, unreasonable, and capricious classification, contrary to the Fourteenth Amendment of the Federal Constitution, and subsections 4 and 29 of section 59 of the Constitution of Kentucky. Whether a particular discrimination or classification offends against those constitutional limitations often presents a difficult question. The principle to be applied in determining the question as it relates to criminal statutes is thus stated in Patsone v. Pennsylvania, 232 U. S. 138, 144, 34 S. Ct. 281, 282 (58 L. Ed. 539):

> "But we start with the general consideration that a state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 80, 81, 31 S. Ct. 337, 55

L. ED. 369, 378, 379, Ann. Cas. 1912C, 160. The state 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.' Central Lumber Co. v. South Dakota, 226 U. S. 157, 160, 33 S. Ct. 66, 57 L. Ed. 164, 169.''

What was or is the evil sought to be prevented and the class feared? The Bill of Rights declares it to be an inherent and inalienable right of all men to apply to those invested with the power of government for all proper purposes by petition, address, or remonstrance. There is no attempt in this law to restrict the legitimate exercise of that right. The act plainly specifies those to whom it applies, who are contradistinguished from those appearing before legislative committees, or legitimately influencing the members in behalf of the public, or in their own behalf, respecting any laudable private enterprise.

When this law was enacted, the activities of those seeking to influence members of the Legislature in behalf of special interests had become a public scandal. Both of the major political parties incorporated in their platforms of 1915 condemnation of such practices, and they became a subject of recommendation by Governor Stanley in his message to the General Assembly of 1916. To protect its members, and for its own information, the Legislature undoubtedly had the right to require the registration of representatives of special interests and to regulate their activities. It is a matter of common and historic knowledge that these representatives—commonly referred to as lobbyists—became so emboldened as to invade the floors of the two bodies while in session, by their presence overawing and influencing timid members, over whom they exercised some control or power.

Recognizing the dangerous potentialities of such audacious practices, and, in order to preserve its dignity, this provision was adopted. The provisions of the act—requiring that lobbyists disclose their identity and expose their expenditures, prohibiting contingent compensation, and restricting their activities within limited bounds, including a bar from the floor of the respective houses, and making a violation of them a criminal offense—all were enacted to the end that corrupt and improper lobbying might be prevented. That is the evil mainly to be feared and sought to be avoided. It is only those having illegi-

timate motives, or who prefer darkness rather than light, who could object to such disclosures or limitations.

Consequently, this cannot be said to be unreasonable class legislation, nor to deprive those guilty of equal protection under the law.

■ (a) Coming to the consideration of the construction to be given this act, particularly the section involved, we have the contention of appellant that section 6 must be read in connection with section 7, which defines corrupt lobbying. Appellant's counsel submits that, in order to maintain the prosecution, the commonwealth must allege and prove that, when a prohibited person went upon the floor of either house without invitation, he undertook then and there to influence, in some manner covered by section 7, some member of the Legislature; that is, that he must have been guilty of some overt act of corrupt lobbying, for to make it a felony merely to enter the legislative chamber without committing such act or having criminal intent would be nonsensible legislation, and wholly ineffectual towards achieving the object of the law.

As suggested, there is no inhibition of the exercise of legislative power in this regard. The Legislature had the authority to make it an offense for those designated to enter its precincts regardless of any intent to commit some other offense. There are scores of acts mala prohibita. We have already suggested some of the reasons which seem to us to have impelled the enactment of this legislation; but the wisdom, efficacy, or futility of the provision to achieve the objective, namely, to prohibit corrupt lobbying and to protect the members of the General Assembly from improper influences, is no concern of the courts. The policy of the courts so to regard the statutes has always been adhered to with a steady resolution. Our duty is only to pass on the constitutionality and construction of the laws, and to see that they are correctly administered.

(b) We are, however, constrained to reverse the judgment, as the lower court should have sustained the demurrer to the indictment, because section 6 must be read in connection with section 1 of the act; that is, it is our opinion that it was the intention of the Legislature that legislative agents or counsel described in the first section, and who are required to register in the docket kept by the Attorney General, are the ones meant to be

excluded from the floors of the houses. As stated, there is no intent manifested to include within any of the provisions of the act representatives of interests of the whole people of the state, as distinct from those representing special interests for compensation. The indictment in this case merely follows the language of section 6, charging that the appellant, while employed for a pecuniary consideration by the Kentucky Federation of Labor, went upon the floor of the House of Representatives, without charging that he was registered or came within the class of those required to register.

Appellant argues that the evidence is not sufficient to sustain the verdict. There was a conflict in the evidence as to whether or not the appellant was on the floor of the House while in session. This made his innocence or guilt a matter for the jury. It may be said that the evidence does not disclose that the appellant was guilty of any improper practice while present in the House, or that he committed any other act proscribed by this statute. It is simply shown that he was employed for a pecuniary consideration by the Kentucky Federation of Labor, and entered the chamber of the House while it was in session without invitation of that body.

For the reason stated, the judgment is reversed for proceedings in accord with this opinion.

Whole court sitting.