**HOUSING AUTHORITY
OF LOUISVILLE,
Appellant,**

v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL
557, Appellee.**

**No. 93–SC–397–DG.**

Supreme Court of Kentucky.

Oct. 27, 1994.

Charles E. Allen, III, Paula D. Walker, Brown, Todd & Heyburn, Louisville, for appellee.

Irwin H. Cutler, Jr., Linda J. Wallbaum, David W. Hupp, Louisville, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a summary judgment of the circuit court upholding an award by an arbitrator of a union contract which found that the contract properly provided that funds were to be withheld by the employer from the paychecks of all employees eligible for union representation regardless of whether they were actually union members.

The issues presented by the Housing Authority of Louisville are as follows: that the Union failed to establish constitutionally mandated procedural safeguards for the use of fair share fees; that HAL has standing to challenge the award; and that the arbitrator exceeded the authority granted by the arbitration agreement.

This action involves a dispute between the union and an employer over the responsibility of the employer to automatically withhold funds from the paychecks of the employees for payments in lieu of union dues. Pursuant to the existing collective bargaining agreement at the time, the employer maintained that it was authorized to withhold funds only from the paychecks of those employees who specifically signed a written authorization. The Union contended that the employer was required to withhold funds from all employees who were eligible to become union members because the funds in question were the equivalent of a service fee to which the Union was entitled because of its representation activities which benefited nonunion employees as well as union workers.

Following a formal union grievance, the case went to arbitration as provided by the agreement. The arbitrator was a former dean of the University of Louisville School of Law who rendered a 22–page opinion in favor of the Union position. HAL filed a complaint in circuit court unsuccessfully seeking to void the award. HAL then appealed unsuccessfully to the Court of Appeals which affirmed the decision of the circuit court and the award of the arbitrator. This appeal followed.

We must first consider the standard of review of a labor management arbitration award. Such an arbitration award must be enforced by the courts if it is a rational, permissible interpretation of the collective bargaining contract. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). As long as the arbitrator's award draws its essence from the collective bargaining agreement, the award is legitimate. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

Federal case law requires courts to defer to an arbitrator's award. *Misco, su-*

*pra.* However, in this case it is unnecessary to reach such an extension of the law because the Opinion and Award of the arbitrator was correct and unambiguous. Consequently, the circuit judge properly granted a summary judgment finding that there was no genuine issue of material fact and that the award of the arbitrator was rationally derived from the language of the agreement and must be enforced even though a court may differ in interpretation. Extensive judicial inquiry into the merits of the issues before the arbitrator is not appropriate. *MSP Collaborative Developers v. Fidelity & Deposit Co. of Maryland,* 596 F.2d 247 (7th Cir.1979).

▮ We must now turn to the question of standing in this situation. First, it appears obvious from the agreement that it is only individual employees of HAL who have standing to raise any alleged illegality concerning the withholding of funds in lieu of union dues. *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The only standing HAL has is to challenge whether the arbitration award is a rational or permissible interpretation of the contract.

▮ HAL argues that the Union must have procedural safeguards in place which will protect employees in the exercise of their constitutional right not to associate with the Union. *Hudson* provides that the union must explain the basis for fair share fees and provide adequate financial disclosure to the nonunion employees. The responsibility for challenging such disclosure and requiring such disclosure is on the nonmember employee and not on the public employer. The adoption of such procedural safeguards is a matter between the Union and the nonunion employees not between the employer and the Union.

▮ In order to have standing to bring a lawsuit, the plaintiff must have a judicially recognizable interest in the subject matter of the suit and a present or substantial interest therein. *HealthAmerica Corp. v. Humana Health Plan,* Ky., 697 S.W.2d 946 (1985); *Winn v. First Bank of Irvington,* Ky.App., 581 S.W.2d 21 (1978). Our court has recog-

nized the difficulty of formulating a precise standard to determine whether a party has standing and has held that the issue must be decided on the facts of each case. *City of Louisville v. Stock Yards Bank & Trust,* Ky., 843 S.W.2d 327 (1992); *Rose v. Council for Better Education, Inc.,* Ky., 790 S.W.2d 186 (1989). In order to support an action, the interest of the plaintiff must be a present or substantial interest as distinguished from a mere expectancy. A plaintiff must have a real, direct, present and substantial right or interest in the subject matter of the controversy. *Winn, supra.* That interest must be more than remote or speculative.

▮ It is well settled that every well-pleaded allegation of a complaint must be taken as true and construed most favorably to the pleading party. *Gall v. Scroggy,* Ky. App., 725 S.W.2d 867 (1987). On review, this Court will confine itself to a determination of whether the matters alleged in the complaint establish the plaintiff's standing to bring the action or whether it is without a substantial interest in the subject matter of the controversy.

The concerns expressed by HAL about the constitutional rights of its nonunion employees may be well intentioned but lack the legal authority required of standing to bring a lawsuit on that basis alone.

The arbitrator found that there was nothing in the record to support the allegation by HAL that the constitutional rights of the nonunion employees were infringed in any way. The arbitrator noted that the contrast between the facts in the *Hudson* case and this case is helpful in resolving the present dispute. The arbitrator determined that in the absence of any proof to the contrary, the fees which nonunion members of the collective bargaining unit pay for representation by the Union are the equivalent of union dues and that the services provided nonunion members consist entirely of representation and collective bargaining and grievance and contract administration. The record before us does not show that the Union was engaged in any extraneous political or ideological activity of any sort.

HAL argues that they were required to have a written authorization from any individual who desired to have union dues withheld. The arbitrator found that under the present contract "union dues" are withheld from the paychecks of all employees "eligible for union representation." The term "union dues" although somewhat inartful, referred to both the dues paid by the members of the Union and the equivalent amounts paid by nonunion employees for services provided by the Union. The arbitrator found that the plain meaning of the contract is that the parties have agreed to withhold union dues or the equivalent thereof for all members of the collective bargaining unit and that procedural safeguards were provided through the use of the authorization forms. There was a provision for indemnity of HAL by the Union of any loss as a result of a claim by an employee.

■ The award rendered by the arbitrator does not violate the constitutional rights of the employees who are not union members. HAL relies on *Board of Trustees of the University of Kentucky v. Public Employees Council Member No. 51*, Ky., 571 S.W.2d 616 (1978), which concerned a state university but was extended to local boards of education in *Fayette County Education Assn. v. Hardy*, Ky.App., 626 S.W.2d 217 (1980). Both of those decisions involved the issue of exclusive union representation. The question of dues deduction was not decided in either court. Exclusive representation is not an issue in this case. Therefore, we find that these authorities are not applicable.

■ Union membership may not be forced on any employee. The employee may choose whether or not to join the union. *Board of Trustees, supra; Fayette County, supra.* However, if the employee receives representation, the public agency has the authority to agree to withhold an amount equal to the proportionate part of the union dues which represents the fee to which the Union is entitled for representing the employee in matters of collective bargaining, grievance and contract administration. The arbitrator in this case determined that the parties incorporated a system of individual authorization merely as a matter of adminis-

trative convenience because under a prior contract, employees hired before November 4, 1974 were not required to join the Union.

The arbitrator concluded that HAL had the authority to enter into a collective bargaining agreement in which it agreed to withhold union dues for employees who were members of the Union or similar amounts for nonunion members who were eligible for union representation. The arbitrator held that this power was not dependent on express authorization from individual employees but rather was the result of the collective bargaining agreement between HAL and the Union. He concluded that the making of such an agreement or the exercise of HAL's power to withhold dues or payments in lieu thereof was not in violation of Kentucky law because the requirements of the contract of written express authorization from individual employees was for the purpose of administrative convenience.

The so-called fair share fees have been held valid in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) and more recently in *Hudson, supra.* The arbitrator found that in this case, unlike *Hudson*, the Union was not engaged in political or ideological activities, but rather confined its activities to the matters of representation in collective bargaining, grievance and contract administration which were beneficial to union and nonunion employees alike.

The arbitrator determined that it was his duty to interpret the collective bargaining agreement in the light of all the laws and general principles regarding contract interpretation. He stated that he was required to find the true intent of the parties from all parts of the agreement, including any reasonable implications that may be derived from the express language of the parties.

It is entirely possible that the parties could have sought declaratory or injunctive relief in a proper court before the Union invoked the grievance procedure which led to arbitration. However, once the arbitration procedure had been initiated, the arbitrator had the authority and responsibility to consider

first the issue and then the merits of the case.

This type of dispute should be considered from a historical and legal perspective. The original National Labor Relations Act permitted the closed shop agreement in which all employment was conditioned on union membership. In 1947, the union shop generally replaced the closed shop. In union shops the employee need not belong to the union at the time of hiring and is not required to join a union until after the expiration of a probationary period.

■■■ Another form of organization is the agency shop in which those employees who are not members of the union do not have to pay union dues as such, but may be required by contract to pay a service fee for the benefits of representation, grievance procedure and contract administration which they receive by virtue of a de facto representation by the Union even though they are not members. In such a situation, a union is permitted to use the funds assessed from those who do not wish to be union members only for the costs directly related to its role as an employee representative and not for political or ideological activities of the union. *Hudson.*

■■■ HAL also contends that the award by the arbitrator violates KRS 337.060(1). We cannot agree. The dues deduction provision in the contract clearly falls within the statutory exception because the Union is the official representative for the regular full-time maintenance employees, and as such has negotiated a collective bargaining agreement with HAL which requires dues or the equivalent deduction. The Union is the official bargaining representative for all employees, not just those who are members of the Union or those who have given HAL written authorization for deductions. Accordingly, when the parties negotiated the requirement in Article V that HAL deduct regular union membership dues from employees eligible for union representation, all regular full-time maintenance employees fall within the exemption of KRS 337.060(1).

*Poynter v. Louisville Railway Co.,* 309 Ky. 609, 218 S.W.2d 658 (1959), applied KRS 337.060 insofar as it did not preclude deductions for union dues when such deductions are authorized by a collective bargaining contract negotiated between the employer and employees or their representatives. The arbitrator did not exceed his authority under the agreement.

In this case, the arbitrator found that there is nothing to indicate that the amounts collected from the employees were to be used for anything other than collective bargaining, grievance procedures and administration of the contract. The language of the collective bargaining agreement between HAL and the Union was obviously carefully drafted to allow employees who did not wish to be represented by the Union to be identified as "eligible for union representation."

There is nothing in *Board of Trustees, supra,* which relieves nonunion employees from the responsibility of sharing the cost of the official representative in negotiating benefits which would be enjoyed by all employees of HAL.

■■■ The 22–page Award and Opinion rendered by arbitrator Harold R. Wren, a former dean of the School of Law at the University of Louisville, demonstrates that he clearly understood the contractual limitations of his authority and that he carefully discharged these responsibilities within the boundaries of the collective bargaining contract. The Opinion and Award was based on his interpretation of the contract provisions and applicable state and federal law. The arbitration award was rational and a permissible interpretation of the labor contract. Under the circumstances, that Opinion and Award must be enforced regardless of whether the circuit court, or any appellate court, might possibly differ in interpretation or application of the contract.

The decision of the Court of Appeals is affirmed.

Special Justice SIDNEY B. DOUGLASS and LEIBSON, REYNOLDS and SPAIN, JJ., concur.

LAMBERT, J., files a dissenting opinion in which STEPHENS, C.J., joins.

LAMBERT, Justice, dissenting.

The comprehensive issue presented is whether the employer (HAL) must withhold union dues from the wages of protesting non-union members without first requiring the union to precisely establish the cost which each employee should bear for nonpolitical collective bargaining representation. It is extraordinary to require any person to pay dues to an organization whose membership he rejects, but *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), authorizes just such involuntary payment of union dues to the extent of fair-share costs.

In *Hudson*, the Court held that before any fair share charges could be levied, the union must provide "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision maker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Hudson*, 475 U.S. at 310, 106 S.Ct. at 1077. In the present case, the arbitrator made a finding that the fair share fees were the same as union dues because there was no proof to the contrary.[1] In so doing, the arbitrator excused the Union of its burden to prove proper use of the funds. The finding contradicts the requirement of *Hudson*, which provides that "[t]he Union should not be permitted to exact a service fee from nonmembers without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining." *Hudson*, 475 U.S. at 305, 106 S.Ct. at 1075 (quoting *Abood v. Detroit Board of Education*, 431 U.S. 209, 244, 97 S.Ct. 1782, 1804, 52 L.Ed.2d 261 (1977)). The Court forcefully declared that "[f]or, whatever the amount, the quality of respondents' interest in not being compelled to subsidize the propagation of political or ideological views that they oppose is clear." *Hudson*, 475 U.S. at 305, 106 S.Ct. at 1075. Because there was no showing by the Union that the fair share fees were not used to advance political or other ideological activities, the award of fees should be invalidated.

Although courts must defer to an arbitrator's award as long as it is a rational, permissible interpretation of the collective bargaining agreement, blind deference should not result when the right of workers to avoid union membership is defeated by calling full union dues fair share fees. Non-union employees have a right to avoid supporting union sponsored political speech. Their decision to not join the union is a rejection of the political and social activities of that organization. While nonunion employees must pay their fair share for collective bargaining services, they should not be required to become full subsidizers of a political organization they oppose.

Moreover, I disagree with the majority's position that the Housing Authority of Louisville (HAL) did not have standing to litigate this matter. To establish standing, a party must assert a real, direct, present and substantial interest in the subject matter of the controversy. The facts of each case are vital to a determination of standing. *See City of Louisville v. Stock Yards Bank & Trust*, Ky., 843 S.W.2d 327 (1992); *Winn v. First Bank of Irvington*, Ky.App., 581 S.W.2d 21 (1978). In the instant case, HAL asserts that payment to the Union of money which was the equivalent of union dues for all non-union employees was an infringement on the constitutional rights of those employees. The majority asserts that "it is only individual employees of HAL who have standing to raise any alleged illegality concerning the withholding of funds in lieu of union dues." Unrecognized by this is HAL's interest in preventing an unconstitutional act which, in practice, forces its non-union employees to become *de facto* members of the Union. *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Additionally, HAL has standing by virtue of its status as custodian of the funds. As stakeholder between the Union which demanded withholding of dues and the employ-

---

1. The arbitrator determined that "[i]n the absence of any proof to the contrary, the fees paid by the non-union members of the collective bargaining unit were for collective bargaining, the handling of grievances, and contract administration, and the terminology 'union dues' was used to describe these fees as well as the dues paid by the union members of the bargaining unit."

ees who demanded that there be no withholding, HAL was in the position of bearing ultimate liability in the event it erred. In my view this is ample to confer standing to resist the withholding on behalf of the employees.

For the foregoing reasons, I respectfully dissent.

STEPHENS, C.J., joins this dissenting opinion.