ASSOCIATED INDUSTRIES OF
KENTUCKY, Appellant,

v.

COMMONWEALTH of Kentucky; Chris Gorman, Attorney General, Commonwealth of Kentucky; George E. Barker, Chair, Kentucky Legislative Ethics Commission; Livingston Taylor, Chairman, Executive Branch Ethics Commission, Appellees.

No. 95–SC–53–TG.

Supreme Court of Kentucky.

Dec. 21, 1995.

John R. Leathers, Buchanan Ingersoll Professional Corporation, Lexington, for appellant.

Chris Gorman, Attorney General, William B. Pettus, Assistant Attorney General, Office of Attorney General, Susan Gormley Tipton, Michael A. Bennett, Kentucky Legislative Ethics Comm., Lori Flanery, Executive Branch Ethics Comm., Frankfort, for appellees.

REYNOLDS, Justice.

The Kentucky Code of Legislative Ethics and the Executive Branch Code of Ethics are challenged as being unconstitutional under the Constitutions of both Kentucky and the United States.

This action was initiated in Franklin Circuit Court by the Associated Industries of Kentucky, which is a statewide association of employers who do business in this state with the purpose of providing a wide range of services relating to legislative and governmental affairs. It actively supports legislation that is intended to benefit Kentucky businesses. The Association (AIK) is exempt from taxation under Section 501(c) of the Internal Revenue Code. The appellees (defendants below) are the Commonwealth of Kentucky, the Attorney General, and the respective chairmen of both the Legislative

Ethics Commission and the Executive Branch Ethics Commission.

AIK's claims arise from the 1993 legislative enactment of KRS 6.601, et seq. and KRS 11A.001, et seq. The pronounced state interest for this legislation was to eliminate the apparent/actual corruption from the political system. Thus, a comprehensive plan was created to regulate lobbying activities by persons undertaking these actions on a paid compensation basis.

For the agents (lobbyists) and their employers, there is created by the legislation a number of requirements relative to their registration, disclosure of interest, and reporting of activities. The registration, disclosure, and reporting requirements, as well as conduct prohibitions, are enforceable by civil and criminal penalties. Under this legislation, AIK is designated as an employer of persons who engage in lobbying activities with the legislative and executive branches of state government. These employees, while engaged, are referred to as "lobbyists," whether engaged within the legislative branch or the executive branch.

Kentucky's public scandal involving the indictment and conviction of legislators, former legislators, and lobbyists for criminal misconduct prompted/hastened the enactment of Senate Bill 7 during the first extraordinary session of 1993. Such legislation made changes to KRS Chapters 6 and 11A which are referred to as the "Kentucky Code of Legislative Ethics" and the "Executive Branch Code of Ethics." Appellant's declaratory judgment action, commenced in December of 1993, challenged 24 provisions of the legislation as being unconstitutional under the federal and Kentucky constitutions. The provisions which include equal protection, right of petition, right of association and due process were challenged for vagueness or overbreadth.

### LACK OF A JUSTICIABLE CONTROVERSY

■ We agree that the trial court correctly declined to address appellant's issue that asserted that the fines and criminal penalties which can be imposed under the legislative and executive codes for failure to properly register, report and/or disclose information violates its First Amendment rights of association and petition. This record does not disclose an actual and justiciable controversy upon this issue to be pending before the court. Appellant, as required, is duly registered with the respective commissions and no proceeding (adjudicatory/investigatory) is disclosed to be pending at this time. A determination of the validity of the challenged statutory penalties is speculative. We consider KRS 418.065 to also be applicable herein. *HealthAmerica Corp. v. Humana Health Plan,* Ky., 697 S.W.2d 946 (1985); *Veith v. City of Louisville,* Ky., 355 S.W.2d 295 (1962); *Revis v. Daugherty,* 215 Ky. 823, 287 S.W. 28 (1926), are controlling.

■ We further agree that the trial court correctly refused, on jurisdictional grounds, to consider appellant's challenge to the expenditure reporting requirements relating to lobbyists' reports and the no campaign contributions requirement. The legislative agents (the affected parties) are not before the court. KRS 6.811(6) enunciates that the legislative agent shall not make a campaign contribution to a legislator, a candidate or a candidate's campaign committee. However, this statutory prohibition does not prohibit appellant from making a campaign contribution.

■ Appellant maintains that it had standing to challenge the expenditure reporting requirements and the prohibition against campaign expenditures applicable to its employees. Further, appellant maintains that it was the vagueness of the personal expenditure concept which was applicable to both the employer and to the agents which caused it to challenge the expenditure reporting requirements of KRS 6.821 as void for vagueness. The employer maintains that the provisions apply equally to itself and the lobbyists and that its challenge was not an attempt to litigate the rights of any other person. Also, the employer maintains that its relationship, in this litigation, to its employees confers standing to assert rights which may even belong individually to the employees and that the legal concept is more correctly addressed as one of standing rath-

er than jurisdiction. A question of whether a litigant demonstrates the existence of an actual controversy affecting his rights which is sufficient to invoke, under the state declaratory judgment act, the court's jurisdiction remains a separate issue from that of whether a party has standing. The trial court declined to exercise jurisdiction as there was no real or justiciable controversy between the parties. Within the context of federal law, it is understood that Article III of the United States Constitution permits only adjudication of actual cases and controversies. *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). An actual controversy requires that a controversy be ripe for adjudication. *Pacific Gas & Elec. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Further, the ripeness doctrine requires the judiciary to refrain from giving advisory opinions on hypothetical issues. *United States v. Fruehauf,* 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961).

■ Franklin Circuit Court lacked jurisdiction to decide the constitutionality of statutory provisions which affected only lobbyists since no real controversy existed as presented by the pleadings. *Revis v. Daugherty, supra; Commonwealth v. Winchester Water Works Co.,* 303 Ky. 420, 197 S.W.2d 771 (1946). All expenditure reporting requirements of KRS 6.821, and such others challenged by appellant, which did not apply exclusively to the legislative lobbyists were adjudicated. In addition to a lack of standing on behalf of the lobbyists, the issue was not raised by any party and has not been preserved for review and is, therefore, moot. Ordinarily, a litigant may only assert his own constitutional rights or immunities. *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). The appellant was required to first allege "a personal stake in the outcome of the controversy" to warrant his right of federal court jurisdiction. Additionally, there must have been shown a causal relationship between appellant's alleged injury and the activity about which it complains. The assertion of one's own legal rights and interests must be demonstrated and the claim to relief will not rest upon the legal rights of third persons. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing was lacking to challenge KRS 6.821(3)(b) and KRS 6.811(6) on behalf of the employee lobbyists.

## CONSTITUTIONAL RIGHTS OF FREEDOM OF ASSOCIATION AND FREEDOM OF PETITION

■ The provisions of KRS 6.811(9) and KRS 11A.236(1) which determine it to be a Class D felony for a person to engage any person to lobby in exchange for compensation that is contingent in any way upon the passage, modification, or the defeat of any legislation; or, for any person to accept any engagement to lobby in exchange for compensation that is contingent in any way upon the passage, modification, or defeat of any legislation are upheld as constitutional. Such acts as enumerated above are against public policy and are void. *See Wood v. McCann,* 36 Ky. (Dana VI) 366 (1838); *Hazelton v. Sheckels,* 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939 (1906). These statutes are neither overly broad nor are they violative of the appellant's freedom of association and right to petition under the Kentucky Constitution or the United States Constitution.

## REGISTRATION, DISCLOSURE AND REPORTING REQUIREMENTS, INCLUDING PROHIBITIONS AGAINST DEFINED CONDUCT

■ Appellant's attack upon KRS 6.809 relates to its payment of a $250 registration fee, which funds are to be utilized to supplement appropriations to the operation of the Ethics Commission. Such was determined, by the trial court, to be constitutional. This argument has now been abandoned. The trial court correctly enunciated that states may not impose a charge upon the exercise of a First Amendment right, but fees may be imposed upon activities protected by the First Amendment if the fees are necessary to achieve an underlying, governmental interest and such fees are used to defray the cost of policing such activity. *Minneapolis Star v. Minnesota Comm'r of Revenue,* 460 U.S. 575, 582, 103 S.Ct. 1365, 1370, 75 L.Ed.2d 295, 303

(1983); *Bright Lights, Inc. v. City of New-port*, 830 F.Supp. 378 (E.D.Ky.1993).

The federal legislative history of lobbying statutes made an appearance in 1852 and 1867 to exclude from the floor of Congress those newspaper persons and former congressmen acting as lobbyists. Within a decade, lobbyists were required to register their identification with the house clerk. Practices such as bribery and large campaign contributions were curtailed by legislation. The Federal Corrupt Practices Act of 1925 (18 U.S.C., Section 2) required a legislator to divulge any campaign contribution in excess of $100, and the names and addresses of contributors. Such was the predecessor, in form, to the present Federal Regulation of Lobbying Act (FRLA). Regulation of lobbying activities, by several of the states, was directed primarily at what was essentially deemed to be corruption. In some instances, the magnitude of the problems prompted incorporation pertaining to lobbying provisions into state constitutions; i.e., New Hampshire, Alabama, Georgia, and California. At present, more than 30 states have statutes requiring various types of disclosure by lobbyists.

One of AIK's basic positions is that the fundamental constitutional rights to freedom of association and freedom of petition, guaranteed by the First Amendment to the United States Constitution and Section 1 of the Kentucky Constitution, are impacted by the Code of Ethics legislation. All parties agree with the premise that the First Amendment to the United States Constitution and Section 1 of the Kentucky Constitution are designed to protect the rights of citizens in a democratic society to participate in the political process of self-government. The United States Constitution, by the First Amendment, provides, "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." This Amendment becomes applicable to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Kentucky Constitution separately heralds the protection of these rights by the provisions of Section 1 of the Kentucky Constitution:

All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned:

. . . . .

Fourth: The right of freely communicating their thoughts and opinions.

. . . . .

Sixth: The right of assembling together in a peaceable manner for their common good, and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance.

▪▪▪ AIK's specific arguments include broad attacks upon the statutory reporting and disclosure scheme imposed upon it by this legislation. It relies upon both constitutions, supplemented with the statement that the most fundamental protection of Kentucky citizens comes from its own constitution, with the United States Constitution serving as a floor. Kentucky is free to interpret its own constitution and afford its citizenry rights of petition and association in excess of those which are federally guaranteed. The conduct prohibited by KRS 6.811 and the registration, disclosure, and reporting requirements of the respective codes do not constitute impermissible abridgement of AIK's First Amendment right to petition and freedom of association. There remains no doubt that the right to associate for the advancement of political ideas is clearly protected by the United States Constitution. *See NAACP. v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Assuredly, freedom of speech, being closely related to freedom of association and the right to petition the government, remains the highest of the liberties safeguarded by the Bill of Rights. *See United Mine Workers of America, District 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426, 430 (1967). With, however, cautionary treatment, the government may regulate the exercise of the protected right of political associations when it is demonstrated, by the government, that a sufficiently important interest exists and there is employed a narrowly drawn means which avoids unnecessary abridgement of as-

sociational rights. *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 638, 46 L.Ed.2d 659, 691 (1976).

■ The trial court's standard of "strict scrutiny" to review any abridgement of plaintiff's First Amendment rights was utilized herein. *NAACP, supra; Buckley, supra;* and *Federal Election Comm'n v. National Right to Work Comm.*, 459 U.S. 197, 207, 103 S.Ct. 552, 559, 74 L.Ed.2d 364, 375 (1982). The challenged legislation requires similar information to that challenged in *Buckley, supra,* and reflects a limited infringement of AIK's First Amendment rights of association and petition. The federal lobbying controls discussed in *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), predate the concept of associational privacy. The United States Supreme Court in *NAACP. v. Alabama, supra,* fashioned a test to measure state actions which would impact upon associational privacy wherein the state must demonstrate a controlling interest in the disclosure requirements; and secondly, must prove that a substantial relationship exists between the state's interest and the information to be gained by disclosure. *Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). The Kentucky legislative acts, however, do not compel disclosure of membership in organizations engaged in advocacy and, therein, develops the emergence of deference and minimum of restriction.

■ Although the legislation burdens the exercise of fundamental rights, the rights may yield where there is a subordinately governmental interest that is compelling. *McDonald v. Smith,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). To assess encroachments upon a basic constitutional right, a three-prong inquiry determines: First, does a statute pose a significant burden on a constitutional right? Secondly, does the statute further compel state interest? Thirdly, if so, does the statute further that interest too broadly, or in the alternative is the statute narrowly tailored to protect that interest? *Buckley v. Valeo, supra. Buckley,* 424 U.S. at 25, 96 S.Ct. at 638 provides:

Yet, it is clear that "[n]either the right to associate nor the right to participate in political activities is absolute." ... Even a "'significant interference' with protected rights of political association" may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedoms. (Citations omitted.)

Additionally:

The strict test established by *NAACP v. Alabama* is necessary because compelled disclosure has the potential for substantially infringing the exercise of First Amendment rights. But we have acknowledged that there are governmental interests sufficiently important to outweigh the possibility of infringement, particularly when the "free functioning of our national institutions" is involved. (Citations omitted.)

*Buckley,* 424 U.S. at 65, 96 S.Ct. at 657.

■ The Commonwealth of Kentucky has a compelling interest in insuring the proper operation of a democratic government and deterring corruption, as well as the appearance of corruption. This, we hold, is demonstrative of the most important of interests and employs means, closely drawn, to avoid unnecessary abridgement of associational freedom.

■ We determine that the legislation does not violate the United States Constitution although a theorist may correctly assert that under Kentucky's Constitution the rights of association and petition may not be absolutely synonymous with that of the federal constitution. We are not convinced in this case that the freedoms of petition and association under the Kentucky Constitution should be afforded a broader scope or a different analysis than the corresponding rights under the United States Constitution. *Commonwealth v. Foley,* Ky., 798 S.W.2d 947, 953 (1990).

■ While there is an absence of state authority relative to identical treatment as to the corresponding rights of association and petition under Section 1(6) of the Kentucky Constitution and that of the United States Constitution, there is a similarity between

the wording of the state and federal constitutional rights of freedom of association and petition. The rights of association and petition under the federal constitution are closely allied to freedom of speech, which is subject to the closest of scrutiny. *Buckley, supra.* Despite appellant's persuasive argument, we prefer to hold that *United States v. Harriss, supra,* continues to represent a valid interpretation of constitutional law to be cited as authority by the state court as well as the federal court. It is recognized that some refinement has developed with the authority so mentioned. The registration, disclosure and reporting provisions of the Kentucky Code of Legislative Ethics and the Executive Branch Code of Ethics are constitutional in view of the purpose and intent expressed by the legislature in enacting such laws. We succinctly hold that the legislature has not sought to prohibit lobbying, but has provided modestly for a modicum of information from those who, for hire, attempt to influence legislation; or, who collect or spend funds for that purpose. For this Court to determine otherwise would be a denial, in large measure, to the legislature of the power of self-protection.

### RIGHT TO LOBBY ANONYMOUSLY

Appellant has acknowledged that the trial court identified the correct legal standard when scrutinizing the abridgement of associational rights. We find no demonstration or explanation as to how there has been a misapplication of the regulation at hand. Anonymous lobbying is an age-old practice and a prohibition of such lobbying without the requirement that lobbyists divulge their identity and that of their employers through registration is not a new or novel concept. The problems arising with special interest groups and lobbyists were foretold by James Madison who advised that their registration should be a primary task of legislation. Lobbying has developed into a sophisticated enterprise as for example:

> Faithful legislators were rewarded with substantial campaign contributions, and, in the case of their recalcitrant colleagues, the contribution would be given to their opponents. Furthermore, lobbyists often enlisted the assistance of an important in-

stitution in the home state or district of a waivering senator or congressman. (Footnote omitted.)

Comment, *Public Disclosure of Lobbyists' Activities,* 38 Fordham Law Review 524, 525 (1970).

This state, in 1916, enacted a Lobbyist Act requiring lobbyists to disclose their identity and expenditures. Additionally, the Act prohibited contingent compensation and, within limited bounds, imposed some restriction on a lobbyist's activities. Criminal penalties were provided for violations of the Act. *Campbell v. Commonwealth,* 229 Ky. 264, 17 S.W.2d 227 (1929). Irrespective of appellant's argument, the right to employ lobbyists without being identified was not upheld in *McIntyre v. Ohio Elections Commission,* — U.S. —, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). *McIntyre* upheld, in that circumstance, the right of anonymous pamphleteering in the context of a referendum. *Buckley, supra,* justified compelled record keeping by candidates of even small campaign contributions and, to date, there is cited no state or federal court case which proclaims that lobbyists or their employers have a right to remain anonymous when attempting to influence legislators.

We decline to hold that the registration, reporting and disclosure provisions of the two codes are an impermissible burden on the members' freedom of association and right to petition. Here the executive lobbyists and legislative agents (lobbyists) and their employers must indicate in the registration statements the real party in interest and on whose behalf the lobbying is taking place. *See* KRS 6.807(1)(b) and KRS 11A.211(1)(b). The codes provide an avenue for some exemptions from disclosure. A number of lobbyist disclosure statutes have heretofore been constitutionally upheld. *Fritz v. Gorton,* 83 Wash.2d 275, 517 P.2d 911 (1974); *Fair Political Practices Comm'n v. Superior Court,* 25 Cal.3d 33, 599 P.2d 46, 157 Cal. Rptr. 855 (1979). The often used phrase "chilling effect" is used by AIK in its argument that the registration, disclosure and reporting provisions interfere with a right to lobby anonymously. We hold otherwise.

Such registration, disclosure and reporting provisions are minimal in view of the scope of the governmental interest of curtailing lobbying abuse. Appellant's right of petition and freedom of association are not constitutionally impaired by KRS 6.807, 6.821, 11A.211 and 11A.216.

The information required to be disclosed under these statutes exhibits a substantial relationship between the state's compelling interest and the information to be disclosed. Reasonable disclosure requirements would appear to be the least restrictive means of curbing the evils that the legislature found to exist. *Buckley*, 424 U.S. at 67, 96 S.Ct. at 658. The reasoning in *Buckley*, which applied to campaign corruption, is most applicable to this case.

Kentucky's compelling interest as to this legislation was directed at regulating both legislators and lobbyists. The definitive purpose is set forth in KRS 6.606 which states:

The proper operation of democratic government requires that a public official be independent and impartial; that government policy and decisions be made through the established processes of government; that a public official not use public office to obtain private benefits; that a public official avoid action which creates the appearance of using public office to obtain a benefit; and that the public have confidence in the integrity of its government and public officials.

The Kentucky General Assembly enunciated its findings and declarations relating to legislative lobbying in KRS 6.801:

(1) The operation of open and responsible government requires the fullest opportunity to be afforded to the people to petition their government for the redress of grievances and to express freely their opinions on executive and legislative action.

(2) The identity and expenditures of certain persons who attempt to influence executive and legislative actions should be publicly identified and regulated to preserve and maintain the integrity of government.

The regulation of lobbyists carries with it the state's interest which provides a benefit to the government, the legislators, and the public. Such a reasoning is amplified by *A.C.L.U. of New Jersey v. New Jersey Election Law Enforcement Comm'n*, 509 F.Supp. 1123, 1129 (D.N.J.1981) which states:

First, disclosure ... permits legislators to evaluate whether the interest of a particular constituency is consistent with the interests of other constituencies.

Second, regulation of lobbying serves the needs of the electorate. "The voting public should be able to evaluate the performance of their elected officials in terms of representation of the electors' interest in contradistinction to those interests represented by lobbyists."

Third, the state has a strong interest in promoting openness in the system by which its laws are created. (Citations omitted.)

The purpose and the function of the codes are not to restrict or prohibit appropriate and protected communications of the lobbyists. To the contrary, the effect of these sections requires only that one who receives compensation and/or expends funds in lobbying must register and report the nature and extent of his activities in a particular regard. *Fritz, supra*. The Court holds that the legislation's narrowing of its scope to the influence of money upon governmental processes results in a degree of avoidance of unconstitutional restrictions upon the ambit of the guarantees of the First Amendment.

The appellee has included within its arguments reference to sections of the statute which the trial court did not address/rule upon; i.e., KRS 6.811(6) (agent shall not make a campaign contribution to a legislator). Neither did the court, for the reasons heretofore set forth, rule upon KRS 6.811(4). Similarly, due to lack of jurisdiction/justiciable controversy, no ruling was set forth on KRS 6.807(7); 6.811(6); 6.821(3)(b), (7)(8); 6.824(4)(5); and 11A.990(6).

## CONSTITUTIONAL EQUAL PROTECTION RIGHTS

As the codes regulate compensated lobbyists only and do not include individuals or

unpaid lobbyist, the specter of a violation of equal protection rights appears in that the entire statutory scheme is constitutionally deficient. This issue was addressed in *Campbell,* 229 Ky. at 270–271, 17 S.W.2d at 229–230:

> The appellant also invokes the equal protection clause of the Federal and State Constitutions. He asserts that, in prohibiting only persons "employed for a pecuniary consideration" to represent citizens in legislative matters from going upon the floor of either house of the General Assembly while in session, the act makes an arbitrary, unreasonable, and capricious classification, contrary to the Fourteenth Amendment of the Federal Constitution, and subsections 4 and 29 of section 59 of the Constitution of Kentucky.... "[W]e start with the general consideration that a state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience.... The state 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.'" (Citations omitted.)

There is a similarity existing between Section 308 of the FRLA which requires a person who engages themselves for compensation to attempt to influence legislation before Congress to registration, disclosure and reporting, and, on the other hand, those persons who attempt to influence legislation but do not receive consideration for doing so are not required to register or file reports. *Harriss, supra. Federal Election Comm'n v. National Right to Work Committee,* 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982), provided for the appropriateness and justification of regulations that treated corporations, unions and similar organizations differently from individuals. Based upon the legislature's recent experiences, the General Assembly drafted legislation which treated paid lobbyists differently from private citizens and unpaid lobbyists. It was specifically determined by the legislature that there was a need to properly identify and regulate compensated lobbyists in order to preserve and maintain the integrity of government. KRS 6.801(2). KRS 6.611(22)(b), 6.809(1) and 11A.010(1) are not violative of the appellant's constitutional right to equal protection. There is a necessary finding of a compelling state interest which validates the classification. *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). There is no sanction for this Court to second guess a determination by the legislature as to the need for measures to prevent corruptive evils. *Federal Election Comm'n, supra.* Appellant's right to equal protection is not violated.

## CONSTITUTIONAL VAGUENESS AND RIGHT TO DUE PROCESS

The trial court, as we have stated, declined to adjudicate the constitutionality of KRS 6.821(3)(b) as it applied only to those legislative agents who were not before the court. The trial court did not adjudicate the constitutionality of KRS 6.821(4)(b) on due process grounds as appellant did not challenge the constitutionality of this provision. However, there is a mechanism in the codes that would overcome due process problems, if any there are. *Buckley, supra.* Vagueness problems would be diminished by the administrative regulations which have been enacted pursuant to KRS 6.666(5). Therein, definitional matters are resolved. *Commission on Indep. Colleges & Universities v. New York Temporary State Comm'n on Regulation of Lobbying.,* 534 F.Supp. 489 (N.D.N.Y.1982). The record does not demonstrate an allegation that administrative remedies have been sought. Both vagueness and due process grounds are addressed in *United States v. Harriss, supra.*

Accordingly, we affirm the judgment of the Franklin Circuit Court and specifically uphold the constitutionality of KRS 6.807(1)–(6); 6.809(1); 6.811(2), (3), (4), (7) and (9); 6.821(2), (4)(a)(2); 6.824(1), (2); 11A.211; 11A.216; 11A.221; and 11A.236(1).

FUQUA and LAMBERT, JJ., JAMES LEVIN, Special Justice, and STUMBO and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., concurs in part and dissents in part by separate opinion.

STEPHENS, Chief Justice, concurring in part and dissenting in part.

It is a well settled and often repeated principle in Kentucky jurisprudence that "[i]n order to have standing to bring a lawsuit, the plaintiff must have a judicially recognizable interest in the subject matter of the suit and a present or substantial interest therein." *Housing Authority of Louisville v. Service Employees International Union, Local 557,* Ky., 885 S.W.2d 692, 695 (1994). In recognition of the subjective nature of this standard, we have held that "[t]he issue of standing is one which is to be decided on the facts of each case." *Rose v. Council for Better Education, Inc.,* Ky., 790 S.W.2d 186, 202 (1989).

Utilizing this standard it is readily apparent that AIK has standing to challenge the statutes which affect individual lobbyists; specifically, the prohibition against working as treasurer in KRS 6.811(5), the campaign contribution prohibition of KRS 6.811(6), the contingency fee prohibition in KRS 6.811(9) and the expenditure reporting requirements of KRS 6.821(3)(b). The subject matter of this suit is the constitutionality of the entire Legislative and Executive Code of Ethics. AIK employs individuals who work as lobbyists to further the interests of AIK's membership. This interest is best furthered by employing lobbyists who will be successful in their lobbying efforts. The success of those lobbyists, as well as AIK's, will be affected by these restrictions. Moreover, AIK's ability to attract those best suited to lobbying will be affected as these restrictions will prevent some individuals from working as lobbyists. Since AIK is an ongoing concern, these "judi-cially recognizable" interests are "present and substantial." For these reasons, AIK has standing to challenge the campaign contribution restrictions and expenditure reporting requirements affecting individual paid lobbyists.

I agree with the majority's conclusion that the expenditure reporting requirements of KRS 6.821 are constitutional. However, I cannot agree that the prohibitions found in KRS 6.811 pass constitutional muster. Specifically, I refer to KRS 6.811 subsections five (5)[1], six (6)[2], and nine (9)[3]. The complete prohibitions found in these sections create a category of second class citizenship based solely on the occupation of an individual. This is intolerable in the face of constitutional protections found in Kentucky Constitution §§ 1, 2, and 3.

This Court has interpreted these sections as providing the citizens of the Commonwealth with equal protection under the laws of this state. See, *Kentucky Harlan Coal Co. v. Holmes,* Ky., 872 S.W.2d 446 (1994); *Commonwealth v. Wasson,* Ky., 842 S.W.2d 487 (1992). With the enactment of the Code of Ethics, the legislature chose to discriminate between paid and unpaid lobbyists. This choice created "a separate and identifiable class for Kentucky constitutional law analysis because no class of persons can be discriminated against under the Kentucky Constitution." *Wasson,* 842 S.W.2d at 500. The exception to that rule arises when "there is a substantial government interest, a rational basis, for different treatment." *Id.*

The majority has correctly pointed out that the legislature has a compelling interest in preserving and maintaining the integrity of the government. However, there is no rational basis for denying an individual, whose occupation is as a lobbyist, the opportunity to serve as a campaign treasurer or fundraiser

---

1. KRS 6.811(5)—A legislative agent shall not serve as a campaign treasurer, or as a fundraiser as set forth in KRS 121.170(2) for a candidate or legislator.

2. KRS 6.811(6)—A legislative agent shall not make a campaign contribution to a legislator, a candidate, or his campaign committee.

3. KRS 6.811(9)—No person shall engage any person to lobby in exchange for compensation that is contingent in any way upon the passage, modification, or defeat of any legislation. No person shall accept any engagement to lobby in exchange for compensation that is contingent in any way upon the passage, modification, or defeat of any legislation. Violation of this provision is a Class D felony.

for a legislative candidate. There are adequate campaign finance laws in place to safeguard the integrity of campaigns. Further, there is no rational reason why a paid lobbyist is prohibited from contributing to the campaign of a legislative candidate. The ability to participate in the electoral process necessarily includes the ability to financially support the candidate of one's own choosing. If the legislature wishes to deny this right based on occupational choices, then perhaps the next restrictions will encompass the ability of lawyers to contribute to the campaigns of judicial candidates. In the final analysis, there was no rational basis for these restrictions to fall only on paid lobbyists.

The criminalization of lobbying on a contingent fee basis defies reason. By including KRS 6.811(9) the legislature infers that a contingency fee system automatically implies unethical behavior. As this Court held in *U.S. Mining & Exploration Natural Resources Co., Inc., v. City of Beattyville*, Ky., 548 S.W.2d 833, 834 (1977):

> The regulation of a lawful business is dependant upon some reasonable necessity for the protection of health, safety, morality, or other phase of the general welfare, and unless an act restricting the ordinary occupations of life can be said to bear some reasonable relation to one or more of these general objects of the police power, it is repugnant to constitutional guarantees and void.

There can be no "reasonable necessity" for this prohibition especially in the face of the long standing tradition of contingent legal fees.

Finally, these restrictions are violative of § 2 of the Kentucky Constitution as an exercise of arbitrary power. The above noted reasoning applies as well to this analysis. If there is no rational basis for the exercise of power, then it is by definition arbitrary and thus constitutionally infirm. This Court has determined that "arbitrary" consists of "whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people." *Kentucky Milk Marketing v. Kroger Co.*, Ky., 691 S.W.2d 893, 899 (1985). Furthermore, if the governmental "action taken rests upon reasons so unsubstantial or the consequences are so unjust as to work a hardship, judicial power may be interposed to protect the rights of persons adversely affected." *Id.* These restrictions on paid lobbyists are just such a circumstance and this Court has the duty to invalidate the prohibitions found in KRS 6.811(5), (6), and (9) as an "arbitrary exercise of power."

For the foregoing reasons, I am dissenting in part and concurring in part from the majority opinion. I would hold that AIK has standing to challenge the statutes which affect their employees and would invalidate the above mentioned sections.