# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00681-CR
NO. 03-03-00686-CR

**Lenn Willian, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NOS. 9034083 & 9034084, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Lenn Willian appeals his convictions for burglary of a habitation with intent to commit arson and committing arson, Tex. Pen. Code Ann. § 30.02(a)(1), (d) (West 2003), and arson. *Id.* § 28.02(a)(2), (d)(2). The jury found appellant guilty of each offense. The trial court found that appellant had been previously convicted in 1995 of attempted burglary of a habitation in Tom Green County, as alleged in the indictment, and assessed punishment in each case at

confinement in prison for twenty-five years.[1]  Another counsel was appointed for appellant on appeal.  A motion for new trial was filed, heard, and overruled.  Notice of appeal was given.

**Points of Error**

Appellant advances ten points of error.  In points one and two, appellant contends that both convictions cannot stand because of the violation of the double jeopardy clause in the federal and state constitutions.  *See* U.S. Const. amends. V and XIV; Tex. Const. art. I, §§ 13, 14 and 19.  Points of error three through ten, in effect, contend that the trial court abused its discretion in overruling the motion for new trial.  In points three, four, and five, appellant urges that a new trial should have been granted in light of newly discovered evidence.  Appellant cites U.S. Const. amends. V and XIV; Tex. Const. art. I, §§ 10 and 19; and Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 2004-05).  In points six and seven, appellant contends that he should have been accorded a new trial because the State failed to disclose evidence favorable to him in violation of his constitutional rights.  He cites "U.S. Const. Amends. V and XIV; Tex. Const. art. 1, §§ 10 and 19."

---

[1] Each indictment alleged the same three prior convictions for enhancement of punishment. At the punishment phase of the trial for both cases, appellant pleaded "true" to the enhancement allegations.  In assessing punishment, the trial court orally found, without designation, that only one prior conviction was to be used for enhancement.  The formal judgments entered in each case reflect the prior conviction utilized as the 1995 conviction for burglary of a habitation in Tom Green County in cause no. 065003651.  The indictment alleged this conviction was one for attempted burglary of a habitation, not burglary.  The allegations are supported by proof.  The formal judgments are reformed to reflect attempted burglary of a habitation rather than burglary.  The use of only one prior conviction is not explained in this record.  An examination of each indictment reflects that all three convictions occurred in 1995.  For this reason the time sequence required by section 12.42(d), the habitual felony statute probably could not be met.  Tex. Pen. Code Ann. § 12.42(d) (West 2003). Appellant's punishment was enhanced under section 12.42(c)(l), Tex. Pen. Code Ann. § 12.42(c)(1) (West 2003).

In points eight and nine, appellant asserts that he was denied the effective assistance of trial counsel as guaranteed by the federal and state constitutions. *See* U.S. Const., amends. VI and XIV; Tex. Const. art. I, §§ 10 and 19. In his tenth and last point, appellant generally urges that the trial court erred in denying his motion for a new trial based on the foregoing contentions.

## Double Jeopardy

Appellant contends that the convictions in both cases violate the double jeopardy clauses of the federal and state constitutions. Appellant briefs these contentions together. While he urges that the Texas Constitution can be interpreted to give greater protection than the United States Constitution, he makes no argument or showing that the Texas constitutional double jeopardy clause differs in any significant way from the Fifth Amendment to the United States Constitution. We need not address point of error two and consider only the double jeopardy issue under the federal constitution. *See Ex parte Granger*, 850 S.W.2d 513, 515 n.6 (Tex. Crim. App. 1993); *Hutchins v. State*, 992 S.W.2d 629, 630 (Tex. App.—Austin 1999, no pet.).

The double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage and applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Fifth Amendment guarantee against double jeopardy embodies three protections: against a second prosecution for the same offense following conviction, against a second prosecution for the same offense following acquittal, and against multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991). Appellant invokes the third of these protections. When a defendant is convicted of two or more crimes in a single trial, only the third of

3

the protections is implicated. *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990); *Duvall v. State*, 59 S.W.3d 773, 777 (Tex. App.—Austin 2001, pet. ref'd).

*Hutchins*, 992 S.W.2d at 631-32 briefly explains the law in this area:

> When the same act or transaction violates two different penal statutes, the two offenses are the same for double jeopardy purposes if one of the offenses contains all the elements of the other; they are not the same if each offense has a unique element. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The double jeopardy guarantee against multiple punishments for the same offense does no more than prevent greater punishment than the legislature intended. *See Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex. Crim. App. 1992). Absent a clear indication of contrary legislative intent, it is presumed that the legislature did not intend to authorize multiple punishments for two offenses that are the same under the *Blockburger* test. *See Whalen v. United States*, 445 U.S. 684, 691-92, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980).

Appellant argues that both offenses arose from the same transaction, incident, acts, and conduct. The undisputed evidence shows that the offenses occurred on the same date in the same place, the habitation of Gena Boswell, during a single transaction or incident. The jury found appellant guilty of arson of a habitation as charged in trial court cause number 9034084, and in the joint trial also by its verdict found him guilty of burglary of a habitation by entering and committing the felony offense of arson in trial court number 9034083. We need not elongate our discussion for the State has confessed error and agrees that the double jeopardy clause of the Fifth Amendment has been violated by multiple punishments.

Normally, when the defendant is convicted of two offenses in violation of the double jeopardy prohibition, the conviction for the offense with the most serious punishment is retained

and the other conviction is set aside. *See Landers v. State*, 957 S.W.2d 558, 560 (Tex. Crim. App. 1997). Here, however, both offenses are first degree felony offenses enhanced by a prior felony conviction. Both parties have requested that the arson conviction be retained and the burglary conviction be vacated and that cause dismissed. It is so ordered. The first point of error is sustained.

## Background

We shall discuss the facts in order to place the other points of error in proper perspective. Robert Ming, a city of Pflugerville firefighter, arrived at 1720 Wells Branch Parkway in the early morning hours of November 30, 2002. Going to the second floor apartment, Ming found the door had been opened by a sheriff's deputy. Smoke filled the apartment, and the visibility was poor. The in-house sprinklers had extinguished the fire. Thermal imaging showed a "hot spot" on a couch indicating the origin of the fire. There was damage to the couch, and the ceiling was charred because of the heat.

Dennis Haas, a Travis County Fire Marshal, arrived at the scene about 3:30 a.m. The fire was out and it had been confined to the couch and a small area of the carpet inside the apartment. Haas, qualified as an expert, opined that the fire had been started on the back of the couch and was not accidental. An empty bottle of vegetable oil was found on the couch, which Haas believed was the accelerant. A burnt match and matchbook were found near the patio entry. Haas believed the match was the source of the fire. A rear window in the apartment had a "very round" hole in it consistent with an impact type fracture. Most of the window glass fell inside the apartment. The window had been unlocked and entry into the apartment had been obtained from the balcony patio.

5

Later Haas took written statements from Gena Boswell, whose habitation was involved, and from Marvina Birdwell, appellant's sister. On December 1, 2002, Boswell gave Haas a number of items which had been taken from her apartment and later found approximately 100 yards behind the apartment "buried in plain sight." One of the items was a round marble ash tray, which had been on the balcony patio and could have been used to break the window.

The ashtray and other items were not checked for fingerprints. Several bottles failed to reveal useable prints. The spot of blood found on the patio was not tested. The items discovered outside appeared to have been handled by a number of individuals after the fire. Haas learned that appellant had once lived in the apartment and finding his preserved fingerprints might have proven meaningless.

Gena Boswell testified that she began an intimate relationship with appellant in July 2000. About two years later they moved to 1720 Wells Branch Parkway, residing first in a ground floor apartment and then moving to the second floor apartment. They separated in October 2002. Boswell continued to live in the apartment. Appellant sought unsuccessfully to reconcile later in October. Appellant called Boswell again in early November and demanded "half of the couch and half of the stuff" as it belonged to him. Boswell refused because she had made a majority of the payments on the items. Appellant called again and threatened her with court action over the property.

Late in November 2002, Boswell locked and secured the apartment. She did not set the burglar alarm. The ashtray was on the balcony patio. Boswell left to spend Thanksgiving in Houston with her family. On December 1, 2002, she observed that appellant had called her on her

cell phone at 2:30 a.m. but left no message. She had a "feeling" the apartment had been set on fire. She later received a telephone message from a State Trooper that there had been a fire in her apartment.

Boswell returned home that day and found the couch burned and that someone had taken her bottle of bleach and poured it over her clothes leaving white spots. She discovered a number of items missing from her apartment including the ashtray, a cell phone bill, birth control pills, a TV remote control, a portable phone, DVD movies, an answering machine, a picture album, and a half-full bottle of wine taken from the refrigerator. Later these items and others were found in a ditch behind the apartment. The wine bottle was empty and her steak knife was "stabbed into the ground." She also found her jewelry boxes in the ditch. Boswell gave a written statement to Haas.

Marvina Birdwell, appellant's sister, testified that about 2 a.m. on November 30, 2002, she was awakened by a phone call from appellant; that he asked to be picked up; and that he was north of where she lived. In response to Birdwell's questions, appellant stated that he was at Boswell's place, had taken what was his, and had "torched the place." Birdwell started to get dressed, but called appellant and told him that she would not pick him up. She then called 911 and reported the fire.

On cross-examination by appellant's trial counsel, Birdwell admitted that it had been a long day and that she was tired and asleep when appellant telephoned. She described appellant as upset, screaming "something" about the apartment being on fire and about his stuff. She admitted this was different than her "torched" language used earlier on direct examination. Birdwell

7

explained that when she gave a written statement to Haas, he told her that he "had the goods on appellant." Birdwell stated that it was Haas who attributed to appellant using the specific terms, "I torched the place and took my stuff out."

## Motion for New Trial

Appellant filed a motion for new trial generally based on the same subject matter as the points of error advanced. The trial court accorded appellant a hearing on the motion and overruled it. Much of the evidence offered will be discussed in our disposition of different points of error. Appellant's trial counsel, the trial prosecutor, appellant's sister Birdwell, and his brother, Bruce Willian, all testified at the hearing. Appellant introduced probationary condition 21 from a prior conviction for retaliation ordering a psychological examination, and the resulting report of Dr. Ferrera of August 1994 reflecting appellant had "borderline personality disorder." The report did not reflect a finding of a bipolar mental disorder. The Travis County jail medical records for appellant from the time of his arrest until trial were introduced into evidence.

At the hearing, Bruce Willian, who had not testified at trial, related that on November 29, 2002, appellant telephoned him from Barney's Bar and that he joined appellant there about 6 p.m. Appellant was drinking rum but began drinking beer when Bruce arrived. Later in the evening, appellant and Bruce and friends moved to the Canary Roost Bar where they continued to consume alcoholic beverages. Bruce explained that appellant was depressed because he had broken up with his girlfriend, lost his job, and had his car repossessed that day. Bruce reported that appellant left the last bar on foot about 1 a.m. on November 30, 2002, before the commission of the alleged arson offense.

8

Marvina Birdwell, the sister, testified at the hearing, this time for appellant. Without giving her educational background, Birdwell stated that she had worked at the Austin State Hospital for twelve years and had sixty hours of training each year. She related that she was a certified health care professional. She was not a psychiatrist or a psychologist and had not cared for or treated appellant. She was permitted to testify that appellant had been diagnosed as being a "borderline personality," suffering from a bipolar disorder along with a schizo-affective disorder. It was her opinion that bipolarism alone could lead to psychotic episodes where the individual would not understand the difference between right and wrong. Birdwell stated that appellant knew that he had these mental illnesses but did not take any medication when not confined, but self-medicated with alcohol. She stated that appellant was an alcoholic and that on some days he drank a twelve-pack of beer and a fifth of rum. Her knowledge of appellant's condition and acts came as a result of family relationships. There was no showing that appellant had been found by any medical expert not to know the difference between right and wrong. Birdwell agreed that if a doctor said appellant knew the difference between right and wrong, she would not dispute it. Birdwell stated that their mother had a nervous breakdown and burned a house and that their father was an alcoholic.

At the hearing on the motion for new trial, appellant's counsel on appeal attempted to get Birdwell to clarify her trial testimony about appellant's telephone call in the early morning hours of November 30, 2002. Birdwell admitted that she was drunk when she went to bed at midnight and was in a deep sleep when appellant called. She did not change her trial testimony about their conversation.

9

We turn now to the points of error which complain of the trial court's error in overruling the motion for a new trial. In reviewing a trial court's decision in overruling a motion for new trial, an appellate court applies an abuse of discretion standard, *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1996), *State v. Gonzales*, 885 S.W.2d 696, 696 (Tex. Crim. App. 1993).

### Newly Discovered Evidence

Appellant's points of error three, four, and five relate to the claimed error in overruling the motion for new trial on the basis of newly discovered evidence.

Article 40.001 of the Code of Criminal Procedure provides:

> A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial.

Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 2004-05).

There is a four-part test under this statute. A defendant is entitled to have his motion for new trial granted if (1) the newly discovered evidence was unknown to him at the time of the trial; (2) his failure to discover the new evidence was not due to the lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002).[2] A failure by a defendant to establish *any* of the essential requirements for a new

---

[2] For a history of the forerunners of article 40.001 of the Texas Code of Criminal Procedure, former Texas Rule of Appellate Procedure 30(b)(6) (West 1992) and former code article 40.03, and the four-part test, *see* 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice*

10

trial based on newly discovered evidence warrants the trial court's denial of the motion. *Shafter v.*

*State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd).

### Evidence Unknown to Movant Before Trial

The first requirement of the four-part test is that the movant for a new trial based on newly discovered evidence must show that he was unaware of that evidence before the trial concluded.

Appellant contends that he was unaware that he suffered from a mental disease or defect that rendered him unable to tell the difference between right and wrong or to conform his behavior thereto at the time of the offense. Appellant's trial counsel testified at the hearing on the motion for a new trial that, just before appellant's sister, Marvina Birdwell, testified for the State at the guilt/innocence stage of the trial, appellant informed him for the first time that appellant suffered

---

*and Procedure* § 41.41 (2d ed. 2001); *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002). The earlier test also set forth four requirements before a defendant was entitled to a new trial based on newly discovered evidence: (1) the evidence must have been unknown to the movant before trial; (2) the defendant's failure to discover it was not due to a want of diligence on his part; (3) its materiality was such as would probably bring about a different result in another trial; and (4) it was competent, not merely cumulative, corroborative, collateral, or impeaching. *See Drew v. State*, 743 S.W.2d 207, 226 (Tex. Crim. App. 1987); *Boyett v. State*, 692 S.W.2d 512, 516 (Tex. Crim. App. 1985); *see also Moore v. State*, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994); *Jones v. State*, 711 S.W.2d 35, 36-37 (Tex. Crim. App. 1986); *Bolden v. State*, 634 S.W.2d 710, 711-12 (Tex. Crim. App. 1982).

> With the passage of article 40.001, the Legislature clarified our rule by explicitly stating a materiality requirement. The only difference between the new statute and our former rule appears to be that the [new] statute expressly requires the discovered evidence to be "material" while the word "material" was omitted from the rule.

*Keeter*, 74 S.W.3d at 36.

11

from a mental bipolar disorder. Counsel related that he was unaware prior to that time that appellant had any mental disorder and that appellant appeared lucid and normal to him in all of his consultations with appellant. On cross-examination, counsel elicited from Birdwell that appellant was an excitable person, was clearly upset when he telephoned Birdwell in the early hours of November 30, 2002, and that appellant took lithium carbonate for his bipolar disorder. Appellant used this evidence in his argument before the trial court on the issues of punishment.

Appellant claims that the evidence came too late to properly present it as a defense of insanity or to use it effectively in the mitigation of punishment. The problem that presents itself at the outset is the fact that if appellant suffered from a bipolar disorder, it was known to appellant for some time prior to trial. The fact that appellant chose not to reveal it to his attorney until late in the trial resulting in only a brief reference to the matter in testimony does not render the evidence unknown to the defense.

> The courts regard the defendant and his or her attorneys as a "knowledge unit" so that what is known to one is known to all for purposes of determining whether the evidence was known before trial. Thus, if the defendant knew of the existence and identity of a witness but failed to tell his or her attorney of that fact, it is not newly discovered evidence that the attorney learns of this information only after trial. Similarly, if the evidence was known to one of two defense attorneys, that is sufficient to prevent it from being newly discovered as to the other attorney who learns of it after trial.

43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 41.42 (2d ed. 2001) (citing *Sawyer v. State*, 778 S.W.2d 541, 545 (Tex. App.—Corpus Christi 1989, pet. ref'd); *Zamora v. State*, 647 S.W.2d 90, 94-95 (Tex. App.—San Antonio 1983, no pet.)).

In *Thomas v. State*, 31 S.W.3d 422, 427 (Tex. App.—Fort Worth 2000, pet. ref'd), the court stated: "It has been held that a trial court does not err in overruling defendant's motion for new trial based on newly discovered evidence when the defense knows about evidence before trial, but chooses not to inform his attorney about it." (citing *Sawyer*, 778 S.W.2d at 545; *Zamora*, 647 S.W.2d at 94). *See also Villarreal v. State*, 79 S.W.3d 806, 813 (Tex. App.—Corpus Christi 2002, pet. ref'd) (evidence that defendant was with his mother and sister at time of burglary cannot have been unknown to defendant before trial). Moreover, the probationary condition 21 ordering a psychological examination was a part of the pen packet of a prior conviction introduced at the penalty stage of the trial. There was no showing that appellant was unaware of the condition imposed on him or that he was unaware of his examination by Dr. Ferrera. Further, appellant knew he was being treated at the county jail and that records were being kept. Evidence that appellant was with his brother the night before the offense cannot have been unknown to appellant. Still further, the fact that his sister had worked for several years at the Austin State Hospital cannot have been unknown to appellant. Appellant has not sustained the first prong of the four-part test and shown that the claimed "new" evidence was unknown to him before the trial conducted. The failure to establish the first essential requirement of four-part test eliminates the necessity of discussing the other requirements. Points three, four and five are overruled.

**Brady v. Maryland**

In points six and seven, appellant urges that the trial court erred in denying his new trial motion based on the State's failure to disclose evidence favorable to him in violation of his federal and state constitutional rights. He cites U.S. Const. amends. V and XIV; Tex. Const. art. I,

13

§ 19; *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Ex parte Adams*, 968 S.W.2d 281, 293 (Tex. Crim. App. 1984).

*Brady* held that the suppression by the prosecutor of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecutor. 373 U.S. at 87. Thus, a prosecutor is required to disclose to an accused material information that is exculpatory.

In post-*Brady* cases, the Supreme Court has held that the duty to disclose such evidence is applicable even though there is no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and the duty encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Moreover, the *Brady* rule encompasses evidence "known only to police investigators" and not to the prosecutor. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). In order to comply with *Brady*, the individual prosecutor has the duty to learn of any favorable evidence known to others acting on the government's behalf in the case. *Id*. at 437. Normally, a three-part test is used to evaluate whether a due process violation has occurred: (1) the State failed to disclose evidence regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material, i.e., there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); *Ex parte Richardson*, 70 S.W.3d 865, 871 (Tex. Crim. App. 2002); *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). The question is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial,

14

understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434; *see also Cook v. State*, 940 S.W.2d 623, 627 (Tex. Crim. App. 1997) (confidence in the "outcome"). The defendant bears the burden of making this showing in light of all the evidence, if the prosecution fails to make a timely disclosure. *Hampton*, 86 S.W.3d at 612.

In his motion for a new trial, appellant alleged that the State failed to disclose before trial exculpatory favorable evidence that appellant had been diagnosed as suffering from "mental illnesses, diseases, defects or disabilities" and that over eight years before trial a psychological examination had been ordered for appellant. The record at the hearing reflects that probationary condition 21 was part of an order deferring adjudication of guilt entered in cause no. 0942646 in the 299th District Court of Travis County in 1994, wherein appellant was charged with the offense of retaliation. The eventual conviction in this case was one of the prior convictions alleged for enhancement of punishment. The condition simply stated: "Outpatient Alcohol/Drug Treatment. Psychological examination and follow all recommended treatment."

At the hearing on the new trial motion, appellant offered from the county probation office records a report of an examination by Dr. Matthew Ferrera dated August 1, 1994, which resulted from condition 21. The report found appellant "appears to suffer from a borderline personality disorder." It further described appellant as an aggressive individual who tends to act impulsively. The report recommended that those supervising him should confront him for "acting out."

It appears that appellant was in the county jail after his arrest in the instant case. At the hearing on the motion for new trial, appellant's medical records at the jail were introduced.

15

These records reflect that appellant was agitated and depressed and had been diagnosed with a bipolar mental disorder and that a doctor had prescribed certain medications for the condition.

The prosecutor who tried the case testified at the new trial hearing. He did not have possession of any of the claimed undisclosed items except probationary condition 21 contained in one document in the pen packet of three prior convictions[3] alleged in the indictment. The prosecutor related that normally he or an investigator would check jail records and probationary records, if applicable, of a defendant about to be tried. He could not recall having done so in the instant case. His file on the instant case did not reflect that he had obtained any of those records although he secured the prior conviction records. The first knowledge the prosecutor had of appellant's bipolar mental condition was when appellant elicited that information at trial.

Although not necessary, no *Brady* motion was filed and no specific request was made by appellant directing the State to any particular type of evidence. Appellant's trial counsel testified at the hearing that the State had given him everything he requested.

The *Brady* rule does not apply when a defendant is already aware of the information. *See Agurs*, 427 U.S. at 103; *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2000); *Havard v. State*, 800 S.W.2d 195, 204 (Tex. Crim. App. 1980); *Jackson v. State*, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976) (no duty to disclose under *Brady* where information was already to defendant). Here, appellant was aware of his bipolar mental condition, belatedly told his counsel, and evidence

---

[3] The prosecutor testified that he saw an order deferring adjudication of guilt in the pen packet but did not examine the document in depth and was unaware of a condition 21 ordering a psychological examination.

16

was produced at trial. The *Brady* rule was not applicable to the county jail records reflecting the same information appellant elicited at trial.

As to probationary condition 21, we observe that the indictment put appellant on notice that the prior conviction for retaliation would be used to enhance punishment. Condition 21 was part of the public record of that conviction. Normally, probationary conditions are served on a defendant at the time of probation. Appellant does not claim that he was unaware of the condition which merely ordered a psychological examination. There is no general public records exception to the *Brady* rule. *Chavis v. North Carolina*, 637 F.2d 213, 225 (4th Cir. 1980); *Dalboaco v. State*, 978 S.W.2d 236, 238 (Tex. App.—Texarkana 1998, pet. ref'd). Documents, however, that are a part of public records are not deemed suppressed by the State if defense counsel should know of them and fails to obtain the record because of a lack of diligence in his investigation. *United States v. Payne*, 63 F.3d 1200, 1208 (2nd Cir. 1995); *Dalbosco*, 978 S.W.2d at 238.

Appellant contends that disclosure of condition 21 would have led him to the resulting examination by Dr. Ferrera in 1994, a part of the Travis County Probation Records. Appellant makes no claim that he does not recall the examination or was unaware of Dr. Ferrera's conclusions. The report was more damaging than favorable to appellant. It did not conclude that appellant suffered from bipolar disorder or any mental condition save "borderline personality."

If the *Brady* rule was applicable here, appellant has not sustained his burden. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). The mere possibility that an item of undisclosed evidence might have helped a

17

defendant or might have affected the outcome of the trial does not establish materiality. *Graves v. Cockrell*, 351 F.3d 143, 154 (*amended on reh'g)*, 351 F.3d 156 (5th Cir. 2003); *Iness v. State*, 606 S.W.2d 306, 310 (Tex. Crim. App. 1980) (refused to construe the due process requirement of *Brady* to compel the disclosure of evidence that would be only generally useful to defense counsel). *See also Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997). The trial court did not abuse its discretion in overruling the motion for new trial based on a claim that the *Brady* rule was violated. Points six and seven are overruled.

## Ineffective Assistance of Counsel

Another basis for appellant's motion for new trial was that he was denied the effective assistance of trial counsel.[4] In points of error eight and nine, appellant contends that the trial court erred in overruling his new trial motion on this basis. Appellant claims that his trial counsel was ineffective because of his failure to adequately investigate the facts, interview witnesses, failure to request a mental health expert to examine appellant, and failure to present evidence of appellant's mental condition.

## The Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel in a state criminal proceeding. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Wilkerson v. State*,

---

[4] A claim of ineffective assistance of counsel can be developed in a hearing on a motion for new trial. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).

18

726 S.W.2d 542, 548 (Tex. Crim. App. 1986). In *Strickland v. Washington*, 466 U.S. 668, 689 (1984), the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must show that (1) his trial counsel's performance was deficient, in that counsel made such serious errors that he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. In this connection, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. "Prejudice" is demonstrated when the convicted defendant shows "a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.; *Parmer v. State*, 38 S.W.3d 661, 665 (Tex. App.—Austin 2000, pet. ref'd); *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd). Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the results unreliable. *Strickland*, 466 U.S. at 687; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). Under *Strickland*, a defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Parmer*, 38 S.W.3d at 665.

The two-pronged standard for testing claims of ineffective assistance of counsel set out in *Strickland* has been adopted for Texas constitutional claims. *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Under the *Strickland-Hernandez* standard, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate

19

the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.). The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Lopez v. State*, 96 S.W.3d 406, 417 (Tex. App.—Austin 2002, pet. ref'd). Whether the *Strickland* test has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not through hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Banks*, 819 S.W.2d at 681. Any judicial review of a defendant's claim of ineffective assistance must be highly deferential to trial counsel. *Thompson*, 9 S.W.3d at 813. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

We do not speculate about trial counsel's strategy. *Blevins v. State*, 18 S.W.3d 260, 271 (Tex. App.—Austin 2000, no pet.). A reviewing court will not second guess through hindsight the strategy of counsel at trial. In the absence of direct evidence in the record of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia*, 57 S.W.3d at 441; *Skeen v. State*, 96 S.W.3d 567, 580 (Tex. App.—Texarkana 2002, no pet.). *Cf. Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999). The challenged conduct will not, under the circumstances, constitute deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 441; *Thompson*, 9 S.W.3d at 814.

20

Trial counsel has a duty to make an independent investigation of the facts of his client's case. *Miranda v. State*, 993 S.W.3d 323, 327 (Tex. App.—Austin 1999, no pet.) (citing *Ex parte Ewing*, 570 S.W.2d 941, 947 (Tex. Crim. App. 1978)). Failure to do so may deprive a defendant of the effective assistance of counsel. *Butler v. State*, 716 S.W.2d 48, 54-55 (Tex. Crim. App. 1986). While we may agree that counsel could have conducted a more thorough investigation, we do not believe that the complained-of omission rose to the level of constitutional ineffectiveness in light of the totality of the representation. The extent of counsel's investigation must be viewed in the context of appellant's cooperation with his counsel facilitating the investigation.

At the hearing on the motion for new trial, appellant's trial counsel testified that he had practiced criminal law for thirty years and had tried over 200 felony cases. He had handled cases where his clients had a bipolar disorder or were manic depressives. Counsel related that he had discussed with appellant the facts of the case, the nature of the evidence likely to be introduced against appellant, the statement supposedly made by appellant to his sister, and the enhancement of punishment allegations. Counsel felt that his time to prepare for trial and to speak with appellant was "adequate." Counsel was appointed five months before trial to represent appellant. He was the second appointed trial counsel. To counsel appellant appeared normal. Appellant was able to communicate and consult with counsel. In effect, counsel was confident that appellant was competent to stand trial and to aid him in any defense offered *at the time of the trial*. *See* Tex. Code Crim. Proc. Ann. art. 46.02, § 1(a) (West 1979). Counsel related that the State had given him everything he requested in his trial preparation.

21

There were no eye witnesses to the offenses charged. For one reason or another, no known fingerprints were identified as being found in the apartment or on the items taken. The blood spot discovered was not tested. Entry into the apartment had been obtained from an outside balcony which was ten feet off the ground. Access to the balcony would have been difficult. Because of the "bizarre" list of items taken, the bleach thrown on clothes, and the fire on the couch apparently started with vegetable oil, it was counsel's trial strategy to raise reasonable doubt by arguing to the jury that the offenses had been committed by teenagers possibly living in the apartment complex who knew when the complainant left her apartment. Counsel suggested to the jury that the stolen items were abandoned in a ditch because the teenagers knew they would be questioned at home about new possessions after it was known that the offense of burglary and arson had been committed in the nearby complainant's apartment.

Just before appellant's sister testified as the last witness for the State, appellant for the first time told counsel that he suffered from a bipolar disorder and was being medicated for it. Counsel had no previous knowledge of this condition. Appellant had earlier told counsel that the allegations in the prior convictions were true. There was no indication that mental health questions were involved in those convictions. Counsel was caught in mid-trial with information that his client had withheld from him. This came after his trial strategy had been formed and advanced by interrogation. On the cross-examination of appellant's sister, counsel was able to elicit this same testimony and to argue it before the trial court on the issue of punishment. On the cross-examination of the sister, counsel tried to blunt her testimony for the State by eliciting evidence that she had used on direct examination the fire marshal's terminology in describing appellant's telephone call. She

22

admitted that she had been asleep when an upset appellant telephoned early on November 30, 2002, and that appellant probably did not use the word "torched."

Counsel was caught in mid-stream with the possibility of changing his trial strategy. Counsel acknowledged that had he known before trial of appellant's mental condition, he "might" have asked for the appointment of an expert to determine appellant's mental health. Counsel made clear that by the time that he learned from appellant about appellant's bipolarism it was too late to give the required statutory notice that he was raising an insanity defense. *See* Tex. Pen. Code Ann. § 8.01 (West 2003); Tex. Code Crim. Proc. Ann. art. 46.03(2)(a) (West Supp. 2004-05).[5]

Based on his long experience, counsel expressed the view that insanity was "an unpopular defense," a dangerous defense. Counsel believed that an insanity defense, to be successful, had to be supported by strong expert psychiatric evidence that a defendant clearly did not know the difference between right and wrong at the time of the offense.

Counsel admitted that he did not request a mid-trial continuance. He generally questioned whether an insanity defense would have been the proper approach in the instant case. In counsel's opinion, such a defense would imply guilt. At the guilt stage of the trial, any emphasis by the defense on evidence of mental health problems less than insanity would undo the earlier trial strategy. A mid-trial continuance with a jury in the box is normally not favored. Further, for various reasons, such continuances are strictly limited by statutory provisions. *See* Tex. Code Crim. Proc.

---

[5] "The term 'mental disease or defect' does not include an abnormality manifested by repeated criminal or otherwise antisocial conduct. Tex. Pen. Code Ann. § 8.01(b) (West 2003).

Ann. art. 29.13 (West 1989).[6]  To prevail, appellant would have to demonstrate that such a motion if filed would have been granted or counsel would have succeeded on the motion.  *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Keller v. State*, 125 S.W.3d 600, 608 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Edmond v. State*, 116 S.W.3d 110, 112 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).  Appellant has made no such demonstration.

Appellant also complains of counsel's failure to discover probationary condition 21 in the documents relating to a prior condition.  Counsel readily admitted that he did not know of this 1994 condition which merely ordered a psychological examination of appellant.  Counsel did not know of the resulting report of Dr. Ferrera's that appellant was an aggressive individual with a borderline personality disorder.  If counsel had known of these eight-year-old documents, they would not of themselves given him a strong basis for adopting a different strategy than he did.

Appellant faults counsel for not requesting a pre-sentence investigation by a probation officer to which he would have been entitled.  *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 9 (West Supp. 2004-05).  The record is silent as to how a pre-sentence investigative report (PSI) would have benefitted appellant on the issue of punishment.  A PSI is a double-edged sword.  It may include

---

[6]  A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

Tex. Code Crim. Proc. Ann. art. 29.13 (West 1989).

24

hearsay, arrest records, details of prior convictions, rumors, victim's recommendations as to punishment, etc. *See generally Fryer v. State*, 68 S.W.3d 62 (Tex. Crim. App. 2002). Here the trial court's authority in the assessment of punishment was limited by proof of a prior conviction. Appellant's assertion that a PSI should have been requested does not support a finding of ineffective assistance of counsel on that basis.

A further ineffectiveness of counsel complaint is made because appellant's trial counsel did not talk to appellant's brother, Bruce Willian, before trial and present him as a witness. Failure to call a witness does not amount to ineffective assistance of counsel unless the record shows that the witness was available at the time of the trial and that the testimony of the witness would have benefitted appellant. *See Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd); *Parmer v. State*, 38 S.W.3d 661, 688 (Tex. App.—Austin 2000, pet. ref'd). There is no showing that Bruce was available at trial. If he was, his testimony would not have benefitted appellant. As noted, Bruce testified at the new trial hearing that he and appellant spent over six hours drinking alcoholic beverages at two different bars before appellant left the last bar on foot, depressed and intoxicated at 1 a.m. on the same morning the offenses occurred. Voluntary intoxication is not a defense to the commission of a crime. *See* Tex. Pen. Code Ann. § 8.04 (West 2003). Appellant contends that Bruce's lay testimony that appellant was "depressed" after six hours of drinking and because appellant had broken up with his girlfriend, lost his job, and had his car repossessed would have advanced a viable defense. It does not appear that if Bruce had been called as a witness, his testimony would have benefitted appellant regardless of what the trial strategy may have been.

25

Appellant urges that counsel failed to talk to his sister, Birdwell, prior to trial. Counsel knew that Birdwell was going to testify for the State about appellant's statement to her in the early morning hours of November 30, 2002, and had discussed the same with appellant. If counsel had talked to her he may have learned that in addition to being in a deep sleep, Birdwell was "drunk" when she answered appellant's telephone call. Counsel's reasons for not interviewing Birdwell prior to trial were not developed at the hearing.

Whether the *Strickland* standard has been met is to be judged by the totality of the representation rather than isolated acts or omissions of trial counsel, and the test is to be applied at the time of the trial and not through hindsight. *Wilkerson*, 726 S.W.2d at 549. The fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness. *Banks*, 819 S.W.2d at 691. The *Strickland* standard has never been interpreted to mean that an accused is entitled to errorless or perfect counsel. *Bridge v. State*, 726 S.W.2d 559, 571 (Tex. Crim. App. 1986). The particular facts and circumstances of each case must be evaluated in any claim of ineffectiveness of counsel. *Johnson v. State*, 691 S.W.2d 619, 628 (Tex. Crim. App. 1984).

Appellant cannot be permitted under the circumstances of this case to withhold vital information from his counsel, then belatedly disclose it, setting the stage for an ineffective assistance of counsel claim and possibly a new trial. A defendant is not allowed to play this game and win. We conclude that the appellant has failed to establish the two-pronged standard of *Strickland*. The trial court did not abuse its discretion in overruling the motion for new trial on this basis. Points of error eight and nine are overruled.

**Point of Error Ten**

In his last point of error, appellant complains that the trial court reversibly erred in overruling the motion for new trial for all the reasons previously discussed. Our earlier discussion has disposed of this general point of error. Point of error ten is overruled.

**Conclusion**

The judgment in trial court case no. 7034084 is reformed to reflect a previous conviction for attempted burglary of a habitation, and as reformed, affirmed. The judgment in trial court case no. 7034083 is vacated and the cause is dismissed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion[*]

Vacated and Dismissed in Cause No. 03-03-00681-CR
Reformed, and as Reformed, Affirmed as to Cause No. 03-03-00686-CR

Filed: August 17, 2005

Do Not Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).